Edward L. Schnitzer (admitted *pro hac vice*)
Gilbert R. Saydah, Jr. (admitted *pro hac vice*)
Texas Bar No. 24027836
David M. Banker (admitted *pro hac vice*)
MONTGOMERY MCCRACKEN WALKER & RHOADS LLP
437 Madison Ave., 24th Floor
New York, NY 10022
Telephone: (212) 867-9500
Facsimile: (212) 599-5085
Email: eschnitzer@mmwr.com
Email: gsaydah@mmwr.com
Email: dbanker@mmwr.com

Kevin M. Lippman
Texas Bar No. 00784479
Deborah M. Perry
Texas Bar No. 24002755
MUNSCH HARDT KOPF & HARR, P.C.
500 N. Akard Street, Suite 3800
Dallas, Texas 75201
Telephone: (214) 855-7500
Facsimile: (214) 855-7584
Email: klippman@munsch.com
Email: dperry@munsch.com

*Attorneys for the Official Committee of Unsecured Creditors
of Tuesday Morning Corporation, et al.*

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| TUESDAY MORNING CORPORATION, *et al.*, | : | Case No. 20-31476-HDH |
| Debtors. | : | (Jointly Administered) |

**OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
TO THE DEBTORS' PURPORTED AMENDMENT TO DIP FINANCING ORDER**

TO THE HONORABLE HARLIN D. HALE, CHIEF U.S. BANKRUPTCY JUDGE:

The Official Committee of Unsecured Creditors (the "Committee") of Tuesday Morning Corporation and its affiliated debtors and debtors in possession (collectively, the "Debtors"), by and through its undersigned counsel, hereby files this objection (the "Objection") to the *Second Stipulation And Notice Regarding Amendment Of The Final ABL DIP Order To Extend The Plan/APA Milestone Date* [Docket No. 796] (the "Purported DIP Amendment"). In support of its Objection, the Committee respectfully states as follows:

**Preliminary Statement**

1. The Committee respectfully requests that the Court deny the Purported DIP Amendment. The amendment, which will extend the critical deadline by which the Debtors must file a plan and/or motion to approve a sale of substantially all of the Debtors' assets, is materially detrimental to the Debtors' unsecured creditors, as well as all other interested parties.

2. The Committee believes that the Debtors' management has decided to pursue a stand-alone plan process regardless of whether such a plan provides creditors with a lower and/or more speculative recovery than a going concern sale process. Conveniently, and not coincidentally, such a plan would keep Debtors' management employed and their equity preserved in violation of the absolute priority rule. The Committee is troubled by what it perceives as the Debtors ignoring and slow-playing potential going concern purchasers of the Debtors' assets who have or will make offers providing a meaningful recovery to the Debtors' unsecured creditors. The Committee is concerned that offers will become progressively less valuable as the closing date is delayed. The Committee can only assume that the Debtors' stall tactics by not filing a motion for an expedited sale process (as demonstrated by the Purported DIP Amendment) and ignoring potential purchasers are an effort to devalue purchase offers and prop up their substandard plan.[1] The Purported DIP Amendment should therefore be denied.

**Background**

3. On May 27, 2020 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the

---

[1] Similarly, at the outset of the case, the Debtors refused to look for a DIP Term lender willing to extend more favorable and reasonable terms, instead insisting that the lender they had obtained (who had multiple conflicts with the Debtors) was the best for the estate. As it turned out, Debtors' management did not know best, and upon the Committee's insistence, a substantially more reasonable and cheaper DIP Term loan was negotiated and approved by this Court.

United States Bankruptcy Court for the Northern District of Texas (the "Court"). The Debtors' cases are being jointly administered under Case No. 20-31476 (HDH) (collectively, the "Chapter 11 Cases").

4. Since the Petition Date, the Debtors continue to manage and operate their businesses as debtors-in-possession pursuant to Bankruptcy Code §§ 1107 and 1108.

5. On June 9, 2020, the United States Trustee for the Northern District of Texas (the "UST") organized and appointed the Committee, consisting of the following members: (i) Nourison Industries, Inc.; (ii) Three Hands Corp.; (iii) The CIT Group/Commercial Services, Inc.; (iv) Peacock Alley, Inc.; and (v) Popular Bath.

**Final DIP Order**

6. On June 26, 2020, this Court entered the *Final Order (I) Authorizing Debtors To (A) Use Cash Collateral On A Limited Basis And (B) Obtain Postpetition Financing On A Secured, Superpriority Basis, (II) Granting Adequate Protection, And (III) Granting Related Relief* (the "**Final DIP Order**") [Docket No. 331] which, *inter alia*, provided a deadline of 95 days after the Petition Date for the Debtors to file a Plan or Sale Motion (the "**Plan/APA Milestone Date**"). The Final DIP Order further provided:

> The Debtors and the Agent with notice to the Committee are authorized to implement, in accordance with the terms of the DIP Documents, any modifications or amendments to any DIP Document which are not material and adverse to the Debtors, and if the Committee has objections to such modifications or amendments, the Committee may seek to have such objection addressed on an expedited basis by the Court with notice to the Debtors and the Agent, for which the Debtors and Agent shall not make such modification or amendment until the Court rules on the Committee's objection. Any modifications or amendments of any DIP Document which are material and adverse to the Debtors shall be subject to prior approval by this Court upon motion by the Debtors.

Final DIP Order, ¶ 91.[2]

**Sale Process**

7. During the months of July and August, multiple interested parties expressed interest in purchasing all or substantially all of the Debtors' assets pursuant to section 363 of the Bankruptcy Code.[3] As of the end of August, there were at least three (3) proposals from financially sound and able counter-parties, each of which would appear to provide a significant and meaningful recovery to the Debtors' unsecured creditors.

8. Following the receipt of such proposals, the Committee requested on more than one occasion that the Debtors file a bidding procedures motion to establish deadlines for bids and to schedule an auction should there exist more than one interested party - a likely event given the interest already expressed. Despite those requests, the Debtors failed to file such a motion. Instead, for months, the Committee was told that the Debtors were working with the interested parties, "considering" the offers, and would only decide if a bidding procedures motion was warranted after they completed their consideration and only if the Debtors believed the offers warranted such a process.

**Plan/APA Milestone Date Extension**

9. On August 14, 2020, the Debtors contacted the Committee for its "review and approval [of] a draft stipulation reflecting the extension to certain ABL milestones and the

---

[2] This provision was heavily negotiated by the Committee as the Committee did not believe it was appropriate for the Debtors and the Agent to simply amend the Final DIP Order and/or DIP Documents without Committee or Court approval.

[3] Despite the Debtors' obligation to "promptly deliver to the Agent and the Committee any and all documentation that in any way relates to a solicitation, offer, or proposed sale or disposition of a material amount of property of the Debtors' estates, including, but not limited to, letters of inquiry, solicitations, letters of intent, or asset purchase agreements" (Final DIP Order, ¶ 69), the Committee was provided with such documents 6-7 days after the Debtors' receipt.

expiration date." On August 17, 2020, the Committee approved the proposed extension stipulation, although such stipulation was never finalized and filed.

10. On August 27, 2020, the Debtors again contacted the Committee, this time seeking Committee approval of a ten-day extension of the Plan/APA Milestone Date. Following the Committee approval of such an extension, the Debtors filed the *Stipulation And Notice Regarding Amendment Of The Final ABL DIP Order To Extend The Plan/APA Milestone Date* (the "**First DIP Amendment Stipulation**") [Docket No. 706] by which paragraph 88 of the Final DIP Order was amended to move the Plan/APA Milestone Date from August 30, 2020 to September 9, 2020. Noticeably, the DIP Amendment Stipulation was agreed to by the Debtors, counsel to the DIP Agent, **and** counsel to the Committee.

**Sale Process Stagnation**

11. Following the entry of the First DIP Amendment Stipulation, the Committee was made aware that the Debtors had ignored a significant section 363 proposal for three weeks, notwithstanding such a proposal having a six-week closing contingency.

12. On September 2, 2020, the Committee informed Debtors' counsel, via telephone, that the Committee would not consent to a further extension of the Plan/APA Milestone Date absent the Debtors filing a bidding procedures motion.[4]

---

[4] At that time, the Debtors mentioned potentially seeking a one-week extension which would then be followed by the Debtors seeking a further multi-week extension to the Plan/APA Milestone Date.

13. On September 3, 2020, the Committee informed Debtors' counsel, by letter, that the Committee "would not agree to a further extension of DIP deadlines, or agree to extend plan exclusivity, unless a bidding procedures motion was on file."[5]

14. On September 4, 2020, the Debtors and Committee received an executed letter of intent (the "**LOI**")[6] from an interested party for a sale which, if closed, will result in a very favorable return for unsecured creditors. The LOI contains a sizeable cash bid coupled with the assumption of certain liabilities. The LOI contains certain deadlines by which the purchase consideration is reduced incrementally in the event the transaction does not close prior to the applicable deadline.

**Purported DIP Amendment**

15. On or about September 2, 2020, Debtors' counsel mentioned to counsel for the Committee that the Debtors were considering an additional one week extension of the deadline to file a plan or sale motion from September 9, 2020 until September 16, 2020. Committee counsel informed Debtors' counsel at that time that they could not and did not consent to such an extension.

16. On September 8, 2020, at approximately 4:00 pm (Eastern), the Debtors' chief restructuring officer informed this Court that the Debtors had agreed with the Agent to extend the Plan/APA Milestone Date from September 9, 2020 not to September 16, but to September 23, 2020. This took place at a hearing concerning a motion for the appointment of an equity committee. This was the first time the Committee had been informed of such an "agreed-upon"

---

[5] Following the September 3rd Letter, the Debtors' professionals cut-off productive communications with the Committee's professionals and refused to abide by their cooperation obligations as set forth in various provisions of the Final DIP Order.

[6] In light of the confidentiality of the letter of intent, the Committee will file a copy of such letter under seal.

extension. In Court, the Committee informed all parties that the Committee did not and does not consent to such an extension, and expressly stated on the record that because the Committee objects to the proposed amendment, that the parties would need to return to Court to have that objection resolved.

17. Notwithstanding the Committee's clear and unequivocal objection, on September 8, 2020, at 7:05 pm (Eastern), Debtors' counsel emailed a copy of the Purported DIP Amendment to counsel for the Committee with an extension date of September 17, a date never previously discussed with the Committee. Six minutes later, at 7:11 pm (Eastern), the Debtors filed the Debtors Purported DIP Amendment which, *inter alia*, stated that "advance notice" of the Purported DIP Amendment was provided to the Committee.

## Objection

**Purported DIP Amendment Is Invalid**

18. The Purported DIP Amendment is invalid as it was filed in violation of paragraph 91 of the Final DIP Order.

19. Paragraph 91 of the Final DIP Order specifically provides that if the Committee objects to "any modifications or amendments to any DIP Document, … the Debtors and Agent shall not make such modification or amendment until the Court rules on the Committee's objection." By the Purported DIP Amendment, the Debtors seek to amend the Final DIP Order and the DIP Agreements to move the Plan/APA Milestone Date by eight (8) days. Despite the Committee objecting to the proposed amendment in open court, the Debtors went ahead and filed the extension as if no objection had been raised, and paragraph 91 of the Final DIP Order did not exist. The Committee submits that this Court should not permit this disregard of the Final DIP Order.

4851-4660-0394v.1

20. To the extent the Debtors suggest that this Court should ignore paragraph 91 of the Final DIP Order and focus on paragraph 89 instead, such a suggestion should be rejected.[7] Any reliance on paragraph 89 is misplaced because paragraph 91 controls "any modification or amendments to any DIP Document," thus including any amendment under paragraph 89. Furthermore, the First DIP Amendment Stipulation that the Debtors entered into with the Committee demonstrates that even the Debtors knew that Committee consent was required. Why else would the Debtors have sought, and obtained, Committee consent to the first extension if such approval was not necessary? Moreover, the Committee believes that it is misleading, at best, for the Debtors to have filed the Purported DIP Amendment as a "Second Stipulation," while having amended the stipulation to remove the Committee as a party,[8] and having failed to expressly mention in their pleading both this material revision, and that the Committee had expressly objected to the proposed amendment only hours earlier.

**Bidding Procedures Are Necessary**

21. The Committee's refusal to agree to an extension of the Plan/APA Milestone Date without the contemporaneous filing of a bidding procedures motion stems from the Committee's serious concern that the Debtors' actions have led, or will lead, to the chilling of bidding for the Debtors assets, propping up a deficient plan, and thus reducing recoveries to the unsecured creditors.

---

[7] The Committee imagines that the Debtors may also try to suggest that they are not amending a DIP Document, but instead simply a deadline contained in the Final DIP Order. Such an argument is meritless as the deadlines at issue are also contained in the DIP Agreement and thus the relief sought by the Debtors involves the amendment of a DIP Document. *See* Purposed DIP Amendment, ¶ 3 (Debtors seek to "amend the Final ABL DIP Order **and ABL DIP Credit Agreement**").

[8] In the First DIP Amendment Stipulation, the definition of "Parties" was the Debtors, Agent and the Committee. In the Purported DIP Amendment, the definition of "Parties" only includes the Debtors and Agent.

22.     The Committee's goal is to maximize the value of the Debtors' estates and generate the best possible result and recovery for the unsecured creditors.  The Committee is agnostic as to whether that result comes from a third-party section 363 going concern sale or a standalone reorganization but believes that the Debtors must pursue a two-pronged approach - simultaneously pursuing both the best sale offer possible and pursuing a standalone reorganization.  The Committee believes that it is not possible for it, or this Court, to support/confirm any standalone reorganization without knowing what result and recovery would be possible pursuant to a sale process.

23.     As noted above, the Committee has been provided with an LOI which, if closed, will result in an extremely favorable return for unsecured creditors.  The purchase consideration however will go down incrementally the further the closing is pushed out. The Committee believes that the Debtors' proposed extension and refusal to file a bidding procedures motion by the current September 9th deadline (regardless of whether or not a plan is also filed by such deadline) with an expedited timeline to submit bids (thus creating an open sales process) will harm creditors of the Debtors' estates.

24.     The Committee is perplexed as to why the Debtors' Board and management could support such an extension considering the damage the Committee believes it will cause. The Committee can only assume that it is a desperate attempt by the Debtors' management to maintain control and handicap potential purchasers from making bids more favorable than a proposed Plan.  The Committee will not support such a plan.  *See In re The Oceanaire Texas Restaurant Company, L.P.,* Case No. 09-34262 (Bankr. N.D. Tex.) (Hrg Transcript Jan. 26, 2010) (in denying confirmation, court found debtor's board did not act in good faith, because the debtor's board refused to consider an offer from a third party and instead "plowed ahead" in an

"improper[] attempt[] to protect insiders of the Debtors who wish to remain involved with the Debtors by imposing unnecessary financial risk upon the Debtors' creditors").

25. While the Committee appreciates that the Purported DIP Amendment only seeks to extend the Plan/APA Milestone Date by eight (8) days, the Committee submits that even such a limited extension should not be approved as it will add additional delay to the already unacceptably delayed process. This is particularly important in light of the LOI having upcoming deadlines which, if not met, will cause the purchase price to be reduced.

**WHEREFORE**, the Creditors' Committee respectfully requests that the Court (a) enter an order denying the Purported DIP Amendment and granting the Objection, and (b) for such other and further relief to which the Creditors' Committee is justly entitled at law or in equity.

Dated: September 8, 2020  MUNSCH HARDT KOPF & HARR, P.C.

By: /s/ Deborah M. Perry
 Kevin M. Lippman
 Texas Bar No. 00784479
 Deborah M. Perry
 Texas Bar No. 24002755
 500 N. Akard Street, Suite 3800
 Dallas, Texas 75201-6659
 Telephone: (214) 855-7500
 Facsimile: (214) 855-7584
 Email: klippman@munsch.com
 Email: dperry@munsch.com

- and -

Edward L. Schnitzer (admitted *pro hac vice*)
Gilbert R. Saydah, Jr. (admitted *pro hac vice*)
Texas Bar No. 24027836
David M. Banker (admitted *pro hac vice*)
Montgomery McCracken Walker & Rhoads LLP

437 Madison Ave., 24th Floor
New York, NY 10022
Telephone: (212) 867-9500
Facsimile: (212) 599-5085
Email: eschnitzer@mmwr.com
Email: gsaydah@mmwr.com
Email: dbanker@mmwr.com

*Attorneys for the Official Committee of Unsecured Creditors of Tuesday Morning Corporation, et al.*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 8th day of September, 2020, a true and correct copy of the foregoing document was served via ECF notification on all parties entitled to ECF notification in this Bankruptcy Case, on the party listed below via email transmission.

/s/ *Deborah M. Perry*
Deborah M. Perry

4851-4660-0394v.1