

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed October 1, 2020**

**United States Bankruptcy Judge**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| Tuesday Morning Corporation, *et al.*,[1] | § | Case No. 20-31476-HDH-11 |
| | § | |
| Debtors. | § | Jointly Administered |

### ORDER APPROVING SALE AND BIDDING PROCEDURES IN CONNECTION WITH A POTENTIAL SALE OF ASSETS OF THE DEBTORS AND GRANTING RELATED RELIEF

On September 29, 2020, the Court[2] conducted a hearing to consider the *Debtors' Expedited*

*Motion Pursuant to Bankruptcy Code §§ 105(a), 363, and 365, and Bankruptcy Rules 2002, 6004,*

*and 6006, for Entry of an Order (A) Approving Sale and Bidding Procedures in Connection with*

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Tuesday Morning Corporation (8532) ("TM Corp."); TMI Holdings, Inc. (6658) ("TMI Holdings"); Tuesday Morning, Inc. (2994) ("TMI"); Friday Morning, LLC (3440) ("FM LLC"); Days of the Week, Inc. (4231) ("DOTW"); Nights of the Week, Inc. (7141) ("NOTW"); and Tuesday Morning Partners, Ltd. (4232) ("TMP"). The location of the Debtors' service address is 6250 LBJ Freeway, Dallas, TX 75240.

[2] Capitalized terms not defined herein shall have the meanings set forth in the Motion.

*a Potential Sale of Assets of the Debtors, (B) Authorizing the Sale of Assets Free and Clear of All Liens, Claims, Encumbrances, and Other Interests, and (C) Granting Related Relief* [Docket No. 948] (the "Motion") filed by the above-captioned debtors (the "Debtors"), and the Court having reviewed and considered (x) the Motion and all relief related thereto, (y) the objections thereto, if any, and (z) the statements of counsel and evidence presented in support of the relief requested by the Debtors at the hearing on the Motion; and it appearing that the Court has jurisdiction to consider and determine this matter in accordance with 28 U.S.C. §§ 157 and 1334; and it further appearing that the legal and factual bases set forth in the Motion and at the hearing establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates and creditors and other parties-in-interest; and upon the record of the hearing and all other pleadings and proceedings in these Chapter 11 Cases, including the Motion; and after due deliberation thereon and good and sufficient cause appearing therefor;

IT IS HEREBY FOUND AND DETERMINED:

A.    This Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334. This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in this district and in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.    The statutory bases for the relief requested in the Motion are: (i) Bankruptcy Code §§ 105, 363, and 365 and (ii) Bankruptcy Rules 2002(a)(2), 6004, and 6006.

C.    Notice of the Motion, having been given to all parties set forth in the Debtors' Master Service List maintained in these cases, is sufficient in light of the circumstances and the nature of the relief requested in the Motion.

D.    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding

pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

E.       The Debtors have articulated good and sufficient reasons for this Court to: (i) approve the Bidding Procedures; (ii) approve the scheduling of an Auction and set the Sale Hearing and approve the manner of notice of the Auction and Sale Hearing; (iii) and approve the procedures for the assumption and assignment of the Assumed and Assigned Contracts, including notice of proposed Cure Amounts.

F.       <u>Notice of Sale</u>. This Order and the Auction and Sale Notice substantially in the form attached as **<u>Exhibit 2</u>** to this Order, are reasonably calculated and sufficient to provide interested parties with timely and proper notice of the proposed Sale, including, without limitation: (i) the date, time, and place of the Auction (if one is held); (ii) the Bidding Procedures; (iii) the deadline for filing objections to the Sale and entry of the Sale Order, and the date, time, and place of the Sale Hearing; (iv) sufficient identification of the Assets likely to be sold; (v) a description of the Sale as being free and clear of liens, claims, encumbrances and other interests, with all such liens, claims, encumbrances and other interests attaching with the same validity and priority to the Sale proceeds; and (vi) notice of the proposed Assumption and Assignment Procedures, and no other or further notice of the Sale shall be required.

G.       <u>Assumption and Assignment Procedures</u>. This Order, the Assumption and Assignment Procedures set forth herein, and the Assumption and Assignment Notice substantially in the form attached as **<u>Exhibit 3</u>** to this Order, are reasonably calculated to provide Contract Counterparties to any Contracts and/or Leases to be assumed by the Debtors and assigned to the

Successful Bidder with proper notice of the intended assumption and assignment of their Contracts and/or Leases, the procedures in connection therewith, and any Cure Amounts relating thereto.

H.      Based upon the foregoing findings and conclusions, the Motion and the record before the Court with respect to the Motion, and good and sufficient cause appearing therefor,

IT IS HEREBY ORDERED THAT:

1.      The Motion is granted as provided herein. All capitalized terms used herein but otherwise not defined shall have the meanings set forth in the Motion or the Bidding Procedures, as applicable.

2.      All objections to the relief requested in the Motion that have not been withdrawn, waived, or settled as announced to the Court at the hearing on the Motion, are overruled.

3.      Notwithstanding anything else contained herein, the entry of this Order shall not impair the Debtors' ability to pursue a plan of reorganization instead of a sale of the Assets if the Debtors determine, in the exercise of their business judgment, after consulting with the Consultation Parties, that it would be in the best interests of their estates to pursue a plan of reorganization instead of a sale.

### A.      Important Dates and Deadlines

4.      <u>Sale Hearing</u>.  Unless the Debtors opt to pursue a plan of reorganization instead of a sale by filing a notice of such intent by October 26, 2020 by 12:00 p.m. (Central Time), the Sale Hearing shall commence on October 29, 2020, at 9:00 a.m. (Central Time) before the Honorable Harlin D. Hale, United States Bankruptcy Judge, at the United States Bankruptcy Court, Northern District of Texas, Earl Cabell Federal Building, 1100 Commerce Street, 14th Floor, Courtroom #3, Dallas, Texas 75242, or before any other judge who may be sitting in his place and stead. The Debtors, after consulting with the Consultation Parties, may adjourn the Sale Hearing without further notice other than by announcement in open Court or on the Court's calendar.

5. <u>General Objection Deadline</u>. Objections, if any, to the Sale of the Assets, the assumption and assignment of the Assumed and Assigned Contracts, or any relief requested in the Motion other than the relief granted by this Court in the Bidding Procedures Order must be: (a) in writing; (b) signed by counsel or attested to by the objecting party; (c) in conformity with the Bankruptcy Rules and applicable local rules; (d) filed with the Clerk of the Bankruptcy Court for the Northern District of Texas, United States Bankruptcy Court, Northern District of Texas – Dallas Division, Earle Cabell Federal Building, 1100 Commerce St., Rm. 1254, Dallas, Texas, 75242, by no later than 5:00 p.m. (Central time) on October 14, 2020 (the "<u>General Objection Deadline</u>"), and (e) served in accordance with applicable local rules so as to be received on or before the relevant objection deadline by the following (collectively, the "<u>Objection Notice Parties</u>"): (i) counsel to the Debtors, Ian T. Peck and Jarom J. Yates, Haynes and Boone LLP, 2323 Victory Ave., Suite 700, Dallas, Texas 75182, ian.peck@haynesboone.com and jarom.yates@haynesboone.com; (ii) counsel for the Agent, Bill Wallander, Vinson & Elkins LLP, 2001 Ross Avenue, Suite 3900, Dallas, Texas 75201-2975, bwallander@velaw.com; (iii) counsel for the Creditors Committee, (a) Edward Schnitzer, Gilbert Saydah and David Banker, Montgomery McCracken Walker & Rhoads LLP, 437 Madison Avenue, New York, NY 10022, eschnitzer@mmwr.com, gsaydah@mmwr.com and dbanker@mmwr.com, and (b) Kevin M. Lippman and Deborah M. Perry, Munsch Hardt Kopf & Harr, P.C., 500 N. Akard Street, Suite 3800 Dallas, Texas 75201-6659, klippman@munsch.com and dperry@munsch.com; (iv) counsel for the Equity Committee (when appointed); and (v) Office of the United States Trustee for the Northern District of Texas, 1100 Commerce St # 976, Dallas, TX 75242 (these procedures are collectively referred to as the "<u>General Objection Procedures</u>"). Each objection shall state the legal and factual basis of such objection.

6.      Only those objections made in compliance with the General Objection Procedures will be considered by the Court at the Sale Hearing. The failure of any objecting person or entity to file its objections by the Objection Deadline and in accordance with the General Objection Procedures will be a bar to the assertion, at the Sale Hearing or thereafter, of any objection (including to the Sale of Assets and assumption and assignment of Leases and Contracts free and clear of liens) and shall be deemed to constitute any such party's consent to the entry of the Sale Order and consummation of the Sale and all transactions related thereto, including, without limitation, such assumption and assignment.

7.      <u>Bid Deadline</u>. All bids by any third party that is interested in acquiring some or all of the Assets must be actually received by the parties specified in the Bidding Procedures on or prior to <u>October 19, 2020 at 5:00 p.m.</u> (Central Time) (the "<u>Bid Deadline</u>"). Within the later of (a) twenty-four (24) hours after the Bid Deadline and (b) twenty-four (24) hours after determining that a Bid constitutes a Qualified Bid, the Debtors shall send via email to those Contract Counterparties listed on the Assumption and Assignment Notice and their respective professionals that have entered into non-disclosure agreement with the Debtors, all adequate assurance and similar information furnished by Qualified Bidders in connection with the submission of their respective Qualified Bids. A form of non-disclosure agreement may be obtained from the Debtors by contacting Jordan Chavez at Jordan.chavez@haynesboone.com.

8.      <u>Auction</u>. If necessary, an Auction with respect to the Assets will be conducted by video and will commence on <u>October 21, 2020 at 10:00 a.m.</u> (Central Time) via Web-Ex link to be provided by the Debtors' counsel. As set forth more fully in the Bidding Procedures, only Qualified Bidders, the Agent, the DIP Term Agent, the Creditors Committee, the Equity Committee, and each of their respective legal and financial advisors shall be entitled to attend

and/or bid at the Auction. At the Auction, authorized disclosure of confidential information under the Confidentiality Agreements of Qualified Bidders, including any past, current or prospective Bids, shall be expanded to included disclosures made in discussions with the Consultation Parties.

**B.    Auction, Bidding Procedures, and Related Relief**

9.      The Bidding Procedures, attached hereto as **Exhibit 1**, are hereby authorized, approved and made part of this Order as if fully set forth herein. The Bidding Procedures shall govern the submission, receipt, and analysis of all Bids relating to the proposed Sale of the Assets. Any party desiring to bid on the Assets shall comply with the Bidding Procedures and this Order. The Debtors are authorized to take any and all actions necessary to implement the Bidding Procedures.

10.    A Qualified Bidder shall confirm that it has not engaged in any collusion with respect to the bidding or the Sale.

11.    In the event that the Debtors timely receive more than one Qualified Bid, the Debtors shall conduct an Auction to request additional competitive Bids from Qualified Bidders with respect to the Assets in accordance with the Bidding Procedures.

12.    If the Debtors do not receive any Qualified Bids with respect to any or all of the Assets, the Debtors shall report the same to the Court, and, shall pursue a plan of reorganization. The rights of the Consultation Parties shall be fully reserved with respect to such report.

13.    Subject to the final determination of this Court, the Debtors are authorized to determine, in their business judgment, after consultation with the Consultation Parties, and pursuant to the Bidding Procedures, the highest or otherwise best Bid(s) constituting the Successful Bidder or Backup Successful Bidder.

14.    Any complaints regarding the sufficiency of data in the data room and/or responsiveness of the Debtors or their professionals to information requests by prospective bidders

should be directed to James Doak, Managing Director, Miller Buckfire & Co., LLC (james.doak@millerbuckfire.com) and may be copied to the Office of the United States Trustee and Counsel to the Creditors Committee via email to the following: Nancy.S.Resnick@usdoj.gov; Lisa.L.Lambert@usdoj.gov; eschnitzer@mmwr.com; and gsaydah@mmwr.com; counsel for the Agent at bwallander@velaw.com; and counsel to the Equity Committee when retained. Correspondence copied to the United States Trustee, the Creditors Committee, the Equity Committee, or the Agent should not include confidential information, as defined under an applicable prospective bidder's NDA.

### C. Assumption and Assignment Procedures

15. The following procedures regarding the assumption and assignment of the Contracts and Leases in connection with the Sale are hereby approved to the extent set forth herein, and shall govern the assumption and assignment of all Contracts and/or Leases proposed to be assumed by the Debtors pursuant to Bankruptcy Code § 365(b) and assigned to the Successful Bidder following a Sale or Sales pursuant to Bankruptcy Code § 365(f) (as defined in the Motion, the "Assumed and Assigned Contracts").

16. On or before October 1, 2020, the Debtors shall file with the Court and serve on all Contract Counterparties an Assumption and Assignment Notice substantially in the form attached hereto as **Exhibit 3**, that identifies, to the extent applicable, (i) the Contract(s) and/or Lease(s) that may be assumed by the Debtors and assigned to the Successful Bidder; (ii) the name and address of the Contract Counterparty thereto; (iii) notice of the proposed effective date of the assignment (subject to the right of the Debtors and Purchaser to withdraw such request for assumption and assignment of the Assumed and Assigned Contract(s) prior to the Closing); (iv) the amount, if any, determined by the Debtors to be necessary to be paid to cure any existing default in accordance with Bankruptcy Code §§ 365(b) and 365(f)(2) (the "Cure Amount"); and (v) the deadlines by

which any such Contract Counterparty must file an objection to the proposed assumption and assignment of any Assumed and Assigned Contract; provided, however, that the presence of any Contract or Lease on an Assumption and Assignment Notice does not constitute an admission that such Contract or Lease is an executory contract or unexpired lease.

17.     Within twenty-four (24) hours after the conclusion of the Auction, the Debtors shall file with the Court and serve by facsimile, electronic transmission, overnight, or first class mail on the Contract Counterparty (and its attorney, if known) to each Assumed and Assigned Contract and to counsel for the Agent a notice: (a) identifying the Successful Bidder; (b) stating which Contract(s) and/or Lease(s) will be assumed and assigned thereto; and (c) containing a statement as to the Successful Bidder's ability to perform the Debtors' obligations under the applicable Assumed and Assigned Contracts (the "Post-Auction Contract Assumption Notice").

18.     Except for objections to the provision of adequate assurance of future performance under any Assumed and Assigned Contract pursuant to Bankruptcy Code § 365 ("Adequate Assurance"), all objections to the assumption and assignment of any Assumed and Assigned Contract, including, without limitation, any objection to the Debtors' proposed Cure Amount must: (a) comply with the General Objection Procedures, including the October 14, 2020 objection deadline; (b) identify the Contract(s) or Lease(s) to which the objector is party; (c) describe with particularity any cure the claimant contends is required under Bankruptcy Code § 365 (the "Cure Claim") and identify the basis(es) of the alleged Cure Claim under the Contract or Lease; and (d) attach all documents supporting or evidencing the Cure Claim (the "Initial Contract Objection Procedures"). Objections to Adequate Assurance must be filed by October 28, 2020 at 12:00 p.m. (Central Time) and must state with specificity what the objecting party believes is required to

provide Adequate Assurance (the "Adequate Assurance Objection Procedures" and collectively with the Initial Contract Objection Procedures, the "Assigned Contract Objection Procedures").

19. If no objection is timely and properly filed and served in accordance with the Assigned Contract Objection Procedures, (a) the Cure Amount set forth in the Assumption and Assignment Notice shall be controlling notwithstanding anything to the contrary in any Assumed and Assigned Contract or other document and the Contract Counterparty thereto shall be forever barred from asserting any other claim against the Debtors or Purchaser with respect to such Assumed and Assigned Contract arising prior to the assignment thereof and (b) the Purchaser's promise to perform under the Assumed and Assigned Contract shall be deemed Adequate Assurance thereunder. To the extent the Debtors dispute any Cure Claim, such dispute shall be presented to the Court at the Sale Hearing, or such later date and time as the Debtors and the objector may agree or the Court may order, but such dispute shall not affect in any way the effectiveness of any assumption and assignment of any Assumed and Assigned Contract.

20. If at any time after filing the Assumption and Assignment Notice the Debtors identify additional prepetition executory contracts and/or unexpired leases to be assumed and assigned to the Purchaser as Assumed and Assigned Contracts (whether before or after closing of any Sale(s) of relevant Assets but prior to the rejection of such executory Contracts and/or Leases), the Debtors shall serve a supplemental Assumption and Assignment Notice by first-class mail, facsimile, electronic transmission, or overnight mail on the Contract Counterparty (and its attorney, if known) to each supplemental Assumed and Assigned Contract at the last known address available to the Debtors by no later than ten (10) calendar days before the proposed effective date of the assignment. A Contract Counterparty receiving any such supplemental Assumption and Assignment Notice shall have until the later of (a) the General Objection Deadline

or (b) ten (10) days from service of the supplemental Assumption and Assignment Notice to file an objection to the assumption and assignment of its Contract(s) and/or Lease(s) in accordance with the Assigned Contract Objection Procedures set forth herein. With respect to any timely filed objection to the Debtors' proposed Cure Amount (a "Cure Objection"), the Debtors may assume and assign the Contract or Lease subject to the Cure Objection prior to the resolution of such dispute provided that on the effective date of such assumption and assignment, the Debtors or the proposed assignee shall pay the undisputed portion of the applicable Cure Amount and shall place an amount equal to the disputed portion of such Cure Amount in a segregated account specifically designated for holding such amounts, pending resolution of the Cure Objection. Any further order entered by this Court approving the assumption and assignment of any Lease(s) in connection with the Sale shall provide that (i) the proposed assignee shall comply with all terms of the assumed and assigned Lease(s), including, without limitation, payment of any year-end reconciliations and adjustments for 2019 and 2020 (the "Adjustment Amounts"), which have not yet been billed or have not yet become due under the terms of the Leases, (ii) the Debtors or any proposed assignee, as applicable, shall be responsible for satisfaction of the Adjustment Amounts, if any, when due in accordance with the terms of the Lease(s), regardless of when such Adjustment Amounts were incurred, and (iii) with respect to indemnification obligations under the applicable Lease(s) arising from third party claims asserted in connection with the Debtors' use and occupancy of leased premises prior to assignment, the Debtors or any potential assignee shall be required to comply with all contractual obligations to indemnify and hold landlords harmless with regard to events which occurred before assumption and assignment, but which were not known to landlords as of the date of the assumption and assignment of their respective Lease(s).

**D.    Auction and Sale Notice**

21.    The Auction and Sale Notice is hereby approved. On or within three (3) business days following the entry of this Order, the Debtors shall cause the Auction and Sale Notice to be served on: (i) all entities known by the Debtors to have expressed an interest in a transaction with respect to the Assets, including all Qualified Bidders; (ii) all state and local taxing authorities or recording offices which have a reasonably known interest in the relief requested; (iii) all insurers; (iv) all non-debtor parties to relevant contracts or leases (executory or otherwise); (v) all parties who are known or reasonably believed, after reasonable inquiry, to have asserted any lien, encumbrance, claim, or other interest in the Assets; (vi) all entities identified by the Consultation Parties that may have an interest in a transaction with respect to the Assets; and (vii) upon all parties set forth in the Debtors' Master Service List maintained in these cases (to the extent any party to receive notice thereby would not receive notice pursuant to sections (i) through (v) above, provided that service upon all entities identified in (i) and (vi) shall be effectuated by electronic transmission and overnight mail).

22.    Not later than October 26, 2020 at 12:00 p.m. (Central Time), the Debtors will file a notice informing the Court and parties in interest whether they intend to seek approval of a Sale or to pursue a plan of reorganization. All rights of the Consultation Parties to object and/or otherwise move with respect to the Debtors' determination, as set forth in the notice, shall be reserved and will not be waived, or in any way affected, by the filing of the Debtors' notice. The deadline for the Consultation Parties to object to either (a) a Sale to the Successful Bidder or (b) to the Disclosure Statement, as applicable, at the October 29, 2020 hearing, shall be October 28, 2020 at 12:00 p.m. (Central Time).

### E. Miscellaneous

23. The Agent, for itself and for and on behalf of the DIP Lenders or the Prepetition Lenders, as applicable, may credit bid (the "Credit Bid Right") any portion and up to the entire amount of the Prepetition Lenders' Claim[1] and the DIP Obligations, as applicable, at any time on any individual asset, portion of the assets, or all assets constituting their respective Collateral in conjunction with any sale pursuant to the Bidding Procedures (a "363 Sale"), unless the Court for cause shown orders otherwise. The Agent shall be a qualified and permitted bidder in all respects at any auction, and shall not be required to submit a deposit, purchase agreement, or any other deliverable or documentation to the Debtors or their representatives or agents. Upon exercise of the Credit Bid Right, the DIP Lenders or the Prepetition Lenders, as applicable, shall not be required to take title to any individual asset, portion of the assets, or all of the assets, and the Agent shall have the right to designate any person or entity that shall take title to the individual asset, portion of the assets, or all of the assets that are subject to the Credit Bid Right. Except for the holders of any Prior Permitted Liens or the lender under any Qualifying DIP RE Facility actually obtained by the Debtors, no other person may credit bid unless the entire amount of the Prepetition Lenders' Claim and the DIP Obligations will be indefeasibly paid in full in cash on the closing of the 363 Sale and be provided Full Satisfaction. Notwithstanding anything to the contrary herein or in the Bidding Procedures, the Debtors may not accept a bid as the Successful Bid unless it provides for Full Satisfaction of the Prepetition Lenders Claim and the DIP Obligations without the consent of the Agent.

---

[1] Capitalized terms used but not defined herein in this paragraph shall have the meaning given in the *Final Order (I) Authorizing Debtors to (A) Use Cash Collateral on a Limited Basis and (B) Obtain Postpetition Financing on a Secured, Superpriority Basis, (II) Granting Adequate Protection, and (III) Granting Related Relief* [Docket No.331]

24. The Debtors are authorized to take all actions necessary and appropriate to implement and effectuate the relief granted pursuant to this Order in accordance with the Motion and to expend such sums of money and do other things as may be necessary and appropriate to comply with the requirements established by the Bidding Procedures and this Order.

25. The Debtors are authorized to conduct the Sale without the necessity of complying with any state or local bulk transfer laws or requirements.

26. The Debtors shall submit to the Court the proposed Sale Order approving the Sale prior to the Sale Hearing.

27. In the event of any conflict between this Order and any applicable Qualified APA(s), the terms of this Order shall control.

28. Any stay of this Order, whether arising from Rules 6004 and/or 6006 of the Federal Rules of Bankruptcy Procedure or otherwise, is hereby expressly waived and the terms and conditions of this Order shall be effective and enforceable immediately upon its entry.

29. This Court shall retain jurisdiction with respect to all matters relating to the interpretation or implementation of this Order.

### # # #   END OF ORDER   # # #

Submitted by:
**HAYNES AND BOONE, LLP**
Ian T. Peck
State Bar No. 24013306
Jarom J. Yates
State Bar No. 24071134
Jordan E. Chavez
State Bar No. 24109883
2323 Victory Avenue, Suite 700
Dallas, TX 75219
Telephone: 214.651.5000
Facsimile:  214.651.5940
Email: ian.peck@haynesboone.com
Email: jarom.yates@haynesboone.com
Email: jordan.chavez@haynesboone.com

**ATTORNEYS FOR DEBTORS**

**Exhibit 1**

**Bidding Procedures**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| Tuesday Morning Corporation, *et al.*,[1] | § | Case No. 20-31476-HDH-11 |
| | § | |
| Debtors. | § | Jointly Administered |

## BIDDING PROCEDURES

On September __, 2020, the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Court") entered the *Order Approving Sale and Bidding Procedures in Connection with a Potential Sale of Assets of the Debtors and Granting Related Relief* [Docket No. ___] (the "Bidding Procedures Order"), in which the Court approved the following procedures (the "Bidding Procedures") setting forth the process by which the above-captioned debtors (the "Debtors") are authorized to conduct a sale or sales (the "Sale") of substantially all of their assets (collectively, the "Assets").

### 1. Property to be Sold

Except to the extent modified in the applicable purchase and sale agreement of the Successful Bidder, the Assets will consist of (i) the real property leases with respect to the store locations of the Debtors, (ii) the Dallas headquarters and distribution center and any other owned real property set forth on a schedule to the Successful Bidder's asset purchase agreement, (iii) deposits with respect to any contracts and leases assumed by the Purchaser and any customer deposits and layaways, proceeds, rents or profits, cash in the acquired real property, whether now owned or hereafter acquired by the Debtors, in each case with respect to or relating to the operations conducted at the acquired real property, and (iv) all real and personal, tangible and intangible property and assets of any kind or nature whatsoever, whether now owned or hereafter acquired by the Debtors, in each case relating to or used in the operations conducted at the acquired real property, which shall include, without limitation, any and all vehicles, inventory, equipment, fixtures, patents, trade names, trademarks, copyrights, software, licenses, and other intellectual property and license rights owned by the Debtors with respect to such operations.

The Assets will be sold free and clear of all liens, claims, encumbrances and other interests (except as otherwise set forth in the applicable purchase and sale agreement).

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Tuesday Morning Corporation (8532) ("TM Corp."); TMI Holdings, Inc. (6658) ("TMI Holdings"); Tuesday Morning, Inc. (2994) ("TMI"); Friday Morning, LLC (3440) ("FM LLC"); Days of the Week, Inc. (4231) ("DOTW"); Nights of the Week, Inc. (7141) ("NOTW"); and Tuesday Morning Partners, Ltd. (4232) ("TMP"). The location of the Debtors' service address is 6250 LBJ Freeway, Dallas, TX 75240.

2.      **Partial Bids**

The Debtors may consider Bids (defined below) for all or substantially all of the Assets in a single Bid from a single Bidder (defined below) or multiple Bids from multiple Bidders for the Assets. Given the nature of the Assets, Bidders will be permitted to submit Bids as follows: (i) Bids for substantially all or the Debtors' Assets or (ii) Bids for only a portion of the Debtors' Assets. A Bid under sub-part (ii) shall be considered a "Partial Bid". In the event a Partial Bid is made, the Debtors may, in their discretion, and after consultation with the Consultation Parties, decide that such Partial Bid shall only be considered a Qualified Bid if (a) one or more Bidders has submitted a Partial Bid for the Debtors' remaining Assets and (b) each applicable Partial Bid otherwise meets all of the other Bid Requirements. At the Auction, any Bidder that has submitted a Partial Bid will be permitted to Bid on Assets not included as part of its Partial Bid provided such Bid otherwise meets the requirements for Qualified Bids and provided such Bid does not alter the terms or conditions of such Bidder's Partial Bid.

3.      **Due Diligence**

Subject to execution of a confidentiality agreement on terms reasonably acceptable to the Debtors (a "Confidentiality Agreement"), any party willing to submit any proposal, solicitation or offer (each, a "Bid") for the Assets (such party, a "Potential Bidder") may be granted access to public and non-public information relating to the Assets to facilitate its consideration of making its Bid, including access to the Debtors' on-line data room (the "Due Diligence Data Room"). For the avoidance of doubt, the Debtors shall provide the Agent, the DIP Term Agent, the Official Committee of Unsecured Creditors (the "Creditors Committee"), the Official Committee of Equity Holders (the "Equity Committee"), together with their respective legal and financial professionals and representatives (collectively, the "Consultation Parties") with access to the Due Diligence Data Room. Any confidentiality agreement previously entered into between the Debtors and a Potential Bidder in effect on the date of the entry of the Bid Procedures Order shall be deemed to be a Confidentiality Agreement for the purposes of these Bidding Procedures. On a daily basis, the Debtors' investment banker will deliver a confidential list of the parties that have executed a Confidentiality Agreement and/or that have been granted access to the Due Diligence Data Room to the professionals of the Creditors Committee and the Equity Committee. Such lists shall be provided on a "professionals eyes only" basis.

The Debtors shall provide to each Potential Bidder reasonable due diligence information as necessary to enable such Potential Bidder to evaluate the Assets. Potential Bidders who may be interested in purchasing the Assets should contact the Debtors' investment banker, Miller Buckfire Attn: James Doak, 787 Seventh Avenue, 5th Floor**,** New York, NY 10019, james.doak@millerbuckfire.com and to Derek Herbert at dherbert@stifel.com; and request a Confidentiality Agreement. The Debtors shall have no obligation to, but may, furnish due diligence information after the Bid Deadline and shall have no obligation to, but may, furnish due diligence information requested by one Potential Bidder to the other Potential Bidders.

In connection with the provision of due diligence information to Potential Bidders, the Debtors shall not furnish any confidential information relating to the Assets, liabilities of the Debtors, or the Sale to any person except a Potential Bidder or such Potential Bidder's duly-authorized representatives to the extent covered by the applicable Confidentiality Agreement.

The Debtors and their advisors shall coordinate all reasonable requests for additional information and due diligence access from Potential Bidders; provided, however, that the Debtors may decline to provide such information to any Potential Bidder who, in the Debtors' reasonable business judgment, after consultation with the Consultation Parties, has not established that such Potential Bidder intends in good faith to, or has the capacity to, consummate a transaction. No conditions relating to the completion of due diligence shall be permitted to exist after the Bid Deadline.

**4.      "As is, Where is"**

Other than as specifically provided in a Qualified APA(s) (as defined below), as applicable, any Sale of the Assets shall be without representation or warranties of any kind, nature or description by the Debtors, their agents or their estates. All of the Assets shall be transferred "as is," "where is" and "with all faults." THE DEBTORS EXPRESSLY DISCLAIM ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE AND MAKE NO WARRANTY, EXPRESS OR IMPLIED, AS TO THE NATURE, QUALITY, VALUE OR CONDITION OF ANY ASSET. Except as otherwise provided in the applicable Qualified APA, all of the Debtors' right, title, and interest in and to the respective Assets will be transferred free and clear of all liens, claims, encumbrances and other interests in accordance with Bankruptcy Code § 363.

Each Potential Bidder for any of the Assets will be deemed to acknowledge and represent that it: (a) has had an opportunity to conduct due diligence regarding the Assets prior to making its Bid; (b) has relied solely upon its own independent review, investigation, and inspection of any document including, without limitation, executory contracts and unexpired leases, in making its Bid; and (c) did not rely upon or receive any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, with respect to the Assets, or the completeness of any information provided in connection with the Sale or the Auction.

**5.      Qualified Bids**

In order to constitute a Qualified Bid (as defined below), a Bid submitted by a bidder (each, a "Bidder") must: (i) be submitted in writing prior to October 19, 2020 at 5:00 p.m (Central Time) (the "Bid Deadline") and (ii) satisfy the following requirements, as determined by the Debtors in their reasonable business judgment, following consultation with the Consultation Parties (collectively, the "Bid Requirements"):

a.    Contain a signed definitive purchase and sale agreement (a "Qualified APA") together with a copy of the signed agreement that is marked to show changes to the form asset purchase agreement (the "Form APA") to be included in the data room and that will serve as the base asset purchase agreement,  and shall: (i) identify the Assets the Bidder seeks to purchase; (ii) contain the form of and total consideration to be paid by such Bidder, including the amount of proposed cash consideration and the liabilities to be assumed, and (iii) not be subject to any (1) financing contingency, (2) contingency relating to due diligence after the Bid Deadline, (3) contingency relating to the approval of the Bidder's board of directors or other

internal approvals or non-governmental third-party consents or approvals, or (4) any conditions precedent to the Bidder's obligation to purchase the Assets other than those included in the Form APA.

b. Be accompanied by the provision of a certified or bank check or wire transfer in the amount of either: (a) 10% of the purchase price proposed in the Qualified APA for Bidders submitting Bids for substantially all of the Assets and (b) 10% of the purchase price proposed in the Qualified APA for Bidders submitting Partial Bids as a good faith deposit (the "Good Faith Deposit"). The Good Faith Deposit shall be held and credited to the closing payment if the Bidder is ultimately determined to be the Successful Bidder (as defined below), if any closing payment is due, or to be returned to the Bidder in whole or in part as applicable if the Bidder is not the Successful Bidder or the Backup Successful Bidder. In the event that a Bidder is selected as the Backup Successful Bidder, the Good Faith Deposit shall be returned to the Backup Successful Bidder within three (3) business days following the closing of a Sale to the Successful Bidder or within three (3) business days following the date that such Successful Backup Bidder's Bid becomes revocable.

c. Contain a written statement that the Bidder agrees to be bound by the terms of the Bidding Procedures and the Bidding Procedures Order and include a commitment that if selected as the Successful Bidder the Bidder's Successful Bid shall remain open and irrevocable until 30 days after the conclusion of the Auction.

d. Contain a written commitment that if selected as the Successful Bidder that the Bidder shall consummate the purchase of the relevant Assets within 10 days following entry of the Sale Order.

e. Identify, with particularity, each and every executory contract and unexpired lease it intends to assume; provided, however, that such list of contracts may be later modified to the extent permitted under the Qualified APA.

f. Be accompanied by evidence satisfactory to the Debtors, after consultation with the Consultation Parties, that the Bidder is willing, authorized (including by such Bidder's board of directors or comparable governing body), capable and qualified financially, operationally, legally and otherwise, of unconditionally performing all obligations under the Qualified APA, including, without limitation, (1) all Assumed Obligations with respect to the relevant Assets and (2) the ability to provide adequate assurance of future performance under contracts and leases to be assumed pursuant to Bankruptcy Code § 365. Such information regarding the Bidder's ability to provide adequate assurance of future performance shall include, among other things: (i) the specific name of the proposed assignee/tenant, if not the Bidder, and the proposed name under which the assignee intends to operate the store if not a current trade-name of the Debtors; (ii) the potential assignee's intended use for the space if different from the present retail operation; (iii) financial statements and annual reports for the proposed assignee for the past two (2) years, including all supplements or amendments thereto or, in the case of a newly formed prospective purchaser (a "Newco"), the date such Newco was formed, information regarding

how the Newco will be financed, disclosure of any material financial commitments of the Newco, and any credit enhancements that will be available to guarantee the Newco's obligations under the leases; (iv) pro forma financial projections for the proposed assignee; (v) information regarding the potential assignee's retail experience; and (vi) a contact person for the proposed assignee that landlords may directly contact in connection with the adequate assurance of future performance.

g.  Provide (a) that the Bidder agrees to serve as the Backup Successful Bidder (as defined in the Bidding Procedures) if it is selected as the next highest and best bid for any particular Assets after the Successful Bid is determined in accordance with the Bidding Procedures and (b) that if selected as the Backup Successful Bidder the Bidder's Bid shall remain open and irrevocable until the earlier of (1) 40 days after the conclusion of the Auction and (2) 20 days after the entry of the Sale Order.

h.  Fully disclose the identity of each entity that will be bidding in any Auction scheduled by the Debtors.

i.  Disclose whether any "insider" (as defined by the Bankruptcy Code) of the Debtors is a participant in, or insider of, the Bidder.

j.  Be submitted to (i) counsel to the Debtors, Ian T. Peck and Jarom J. Yates, Haynes and Boone LLP, 2323 Victory Ave. Suite 700, Dallas, Texas 75182, ian.peck@haynesboone.com and jarom.yates@haynesboone.com; (ii) the Debtors' investment banker, Miller Buckfire Attn: James Doak, 787 Seventh Avenue, 5th Floor, New York, NY 10019, james.doak@millerbuckfire.com and to Derek Herbert at dherbert@stifel.com; (iii) counsel for the Agent, Bill Wallander, Vinson & Elkins LLP, 2001 Ross Avenue, Suite 3900, Dallas, Texas 75201-2975, bwallander@velaw.com; (iv) counsel for the Creditors Committee, (a) Edward Schnitzer, Gilbert Saydah and David Banker, Montgomery McCracken Walker & Rhoads LLP, 437 Madison Avenue, New York, NY 10022, eschnitzer@mmwr.com, gsaydah@mmwr.com and dbanker@mmwr.com and (b) Kevin M. Lippman and Deborah M. Perry, Munsch Hardt Kopf & Harr, P.C., 500 N. Akard Street, Suite 3800 Dallas, Texas 75201-6659, klippman@munsch.com and dperry@munsch.com; and (v) counsel for the Equity Committee, so as to be received not later than the Bid Deadline, October 19, 2020 at 5:00 p.m. (Central Time).

**6.    Qualified Bidders**

A Bid that satisfies each of the Bid Requirements, as determined in the Debtors' reasonable business judgment, after consultation with the Consultation Parties, shall constitute a "Qualified Bid," and such Potential Bidder shall be a "Qualified Bidder" The Debtors shall notify each Qualified Bidder that such party is a Qualified Bidder prior to the Auction.

If any Bid, including any Partial Bid, is determined by the Debtors, after consultation with the Consultation Parties, not to be a Qualified Bid, the Debtors shall cause such Bidder to be

refunded its Good Faith Deposit and all accumulated interest thereon on or within three (3) business days after the Bid Deadline.

Between the date that the Debtors notify a Potential Bidder that it is a Qualified Bidder and the date of the Auction, the Debtors may discuss, negotiate, or seek clarification of any Qualified Bid from a Qualified Bidder. Except as otherwise set forth in a Qualified APA, a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid without the written consent of the Debtors (which consent may only be provided following consultation with the Consultation Parties), except for proposed amendments to increase the consideration contemplated by, or otherwise improve the terms of, the Qualified Bid, during the period that such Qualified Bid remains binding as specified herein; provided, that any Qualified Bid may be improved at the Auction as set forth herein. Any improved Qualified Bid must continue to comply with the requirements for Qualified Bids herein.

Notwithstanding the foregoing, the Debtors shall provide listen-only access to the Auction to a landlord that is a Contract Counterparty to a Lease(s) listed on the Assumption and Assignment Notice and such landlord's counsel provided such landlord has entered into a non-disclosure agreement with the Debtors and has provided the Debtors email notice to Jordan.chavez@haynesboone.com of their intent to attend the Auction, identifying the Contract Counterparties represented and the applicable Lease(s) impacted by the Auction. A form of non-disclosure agreement may be obtained from the Debtors by contacting Jordan Chavez at Jordan.chavez@haynesboone.com. During the Auction, landlords may transmit any questions or concerns regarding the Auction via email or by phone to counsel for the Debtors at the following email address and phone number: Jordan.chavez@haynesboone.com; 214.651.5453.

## 7. Notice Procedures

### a. Notice of Auction and Sale Hearing

After entry of the Bidding Procedures Order, the Debtors will cause the Notice of Auction and Sale Hearing, substantially in the form attached as <u>Exhibit 2</u> to the Bidding Procedures Order (the "<u>Auction and Sale Notice</u>"), to be served by first-class mail, postage prepaid, facsimile, electronic transmission, or overnight mail upon: (i) all entities known by the Debtors to have expressed an interest in a transaction with respect to the Assets; (ii) all state and local taxing authorities or recording offices which have a reasonably known interest in the relief requested; (iii) all insurers; (iv) all non-debtor parties to relevant contracts or leases (executory or otherwise); (v) all parties who are known or reasonably believed, after reasonable inquiry, to have asserted any lien, encumbrance, claim, or other interest in the Assets; and (vi) upon all parties set forth in the Debtor's Master Service List maintained in these cases (to the extent any party to receive notice thereby would not receive notice pursuant to sections (i) through (v) above).

### b. Notice of Assumption and Assignment of Contracts

On or before October 1, 2020, the Debtors will serve the Assumption and Assignment Notice, substantially in the form attached as <u>Exhibit 3</u> to the Bidding Procedures Order (the "<u>Assumption and Assignment Notice</u>"), by first-class mail, facsimile, electronic transmission, or overnight mail on each counterparty under each potential Assumed and Assigned Contract (as

defined below) (a "Contract Counterparty") and its attorney, if known, in each case, at the last known address available to the Debtor.

The Assumption and Assignment Notice shall set forth the following information: (i) the Contract(s) and/or Lease(s) that may be assumed by the Debtors and assigned to the Successful Bidder; (ii) the name and address of the Contract Counterparty thereto; (iii) the amount, if any, determined by the Debtors to be necessary to be paid to cure any existing default in accordance with Sections 365(b) and 365(f)(2) of the Bankruptcy Code (the "Cure Amount"); and (iv) the deadlines by which any such Contract Counterparty must file an objection to the proposed assumption and assignment of any Assumed and Assigned Contract, provided, however, that the presence of any Contract or Lease on an Assumption and Assignment Notice does not constitute an admission that such Contract or Lease is an executory contract or unexpired lease or that it will be assumed and assigned to the Successful Bidder.

Within twenty-four (24) hours after the conclusion of the Auction, the Debtors shall file with the Court and serve by facsimile, electronic transmission, overnight, or first-class mail on the Contract Counterparty (and its attorney, if known) to each Assumed and Assigned Contract a notice: (a) identifying the Successful Bidder; (b) stating which Contract(s) and/or Lease(s) will be assumed and assigned thereto; and (c) containing a statement as to the Successful Bidder' ability to perform the Debtors' obligations under the applicable Assumed and Assigned Contracts.

## 8. No Qualified Bids

If the Debtors do not receive any Qualified Bids with respect to any or all of the Assets, the Debtors shall report the same to the Court, and, shall pursue a plan of reorganization. The rights of each of the Consultation Parties are reserved with respect to any such report.

## 9. Auction

In the event the Debtors receive more than one Qualified Bid, the Debtors shall conduct an Auction to request additional competitive Bids from Qualified Bidders.

Following consultation with the Consultation Parties, the Debtors shall determine which Qualified Bid shall constitute the "Baseline Bid" for purposes of the Auction. The Debtors shall notify each Qualified Bidder of the contents of the Baseline Bid. The Baseline Bid shall be subject to higher and better Bids at the Auction.

In making the determination of which Qualified Bid(s) constitutes the Successful Bid, the Debtors may, following consultation with the Consultation Parties, take into account any factors the Debtors reasonably deem relevant to the value of the Qualified Bid(s) to the Debtors' estates, including, among other things: (a) the number, type, and nature of any changes to the Form APA requested by the Qualified Bidder, including the type and amount of Assets sought and the liabilities of the Debtors to be assumed in the Bid; (b) the amount and nature of the total consideration; (c) the likelihood of the Bidder's ability to close a transaction and the timing thereof;

and (d) the tax consequences of such Qualified Bid (collectively, the "Bid Assessment Criteria").[2] The Debtors will evaluate competing Bids in a manner that will maximize the aggregate value to the estate.

In the event that the Debtors hold an Auction, the Auction will be conducted by video and will commence on October 21, 2020 at 10:00 a.m. (Central Time) via Web-Ex link to be provided by the Debtors' counsel, or such later date and time as selected by the Debtors. The Auction shall be conducted in a timely fashion according to the following procedures:

a.   The Debtors Shall Conduct the Auction.

The Debtors and their professionals shall direct and preside over the Auction. At the start of the Auction, the Debtors shall describe the terms of the Baseline Bid. All incremental Bids made thereafter shall be Overbids (as defined herein) and shall be made and received on an open basis, and all material terms of each Overbid shall be fully disclosed to all other Qualified Bidders. The Debtors shall maintain a written transcript of all Bids made and announced at the Auction, including the Baseline Bid, all Overbids, and the Successful Bid.

In order to participate in the Auction, each prospective purchaser must be a Qualified Bidder. Each Qualified Bidder must have at least one individual representative with authority to bind the Qualified Bidder attend the Auction via Web-Ex. Only Qualified Bidders, the Agent, the DIP Term Agent, the Creditors Committee, the Equity Committee, and each of their respective legal and financial advisors shall be entitled to attend and/or bid at the Auction. By attending the Auction, each party present at the Auction agrees to keep the Auction, the Bids at the Auction and all details concerning the Auction confidential. The Auction shall be conducted in the presence of a certified court reporter who shall transcribe the Auction.

b.   Auction Procedures.

A Qualified Bidder wishing to submit a Bid at the Auction must submit a Bid containing aggregate consideration of at least (i) $250,000 more than the total consideration contained in the Baseline Bid (the "Minimum Overbid") or (ii) if applicable, any breakup fee, expense reimbursement, and/or minimum overbid set forth in any subsequent order establishing a stalking horse bidder.

Subject to the Minimum Overbid, Qualified Bidders shall submit successive Overbids in increments to be determined by the Debtors at the Auction, following consultation with the Consultation Parties (the "Incremental Bid Amount"), for the purchase of the Assets for which it is bidding (each an "Overbid").

During the course of the Auction, the Debtors shall, after the submission of each Overbid, promptly inform each Qualified Bidder which Overbid (or combination of Overbids in the event that any Partial Bids are determined to be Qualified Bids) reflects, in the Debtors' view, following

---

[2] For avoidance of doubt, the Bid Assessment Criteria listed herein are not exhaustive and are provided for illustrative purposes only, and the Debtor, in its sole discretion, may consider any additional criteria that they consider reasonably relevant to the value of any Qualified Bid.

consultation with the Consultation Parties, the highest or otherwise best Bid for some or all of the Assets.

      c.   <u>Consideration of Overbids</u>.

The Debtors reserve the right, in their reasonable business judgment (determined following consultation with the Consultation Parties), to adjourn the Auction to, among other things: facilitate discussions between the Debtors and Qualified Bidders; allow Qualified Bidders to consider how they wish to proceed; and provide Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors, in their reasonable business judgment (determined following consultation with the Consultation Parties), that the Qualified Bidder has sufficient internal resources, or has received sufficient non-contingent debt and/or equity funding commitments, to consummate the proposed transaction at the prevailing Overbid amount.

      d.   <u>Closing the Auction</u>.

(i) The Auction shall continue until there is only one Bid (or combination of Bids if there are Qualified Bidders that submitted Partial Bids) that the Debtors determine, following consultation with the Consultation Parties, and subject to Court approval, is the highest and/or best offer for the purchase of the Assets (whether in an aggregate sale to a single buyer or by separate sales in the case of Partial Bids to separate buyers, the "<u>Successful Bid</u>" and such Bidder(s), the "<u>Successful Bidder</u>")), at which point, the Auction will be closed. The Debtors, in consultation with the Consultation Parties, may continue the Auction from day to day to accommodate continued bidding. Such acceptance by the Debtors of the Successful Bid is conditioned upon approval by the Court of the Successful Bid and shall remain subject to the Debtors' right to pursue a plan of reorganization. The second highest Bid (or combination of Bids if there are Qualified Bidders that submitted Partial Bids), to the extent determined to be acceptable to the Debtors shall be deemed to be the backup bid (whether in an aggregate sale to a single buyer or by separate sales in the case of Partial Bids to separate buyers, the "<u>Backup Successful Bid</u>" and such Bidder(s), the "<u>Backup Successful Bidder</u>").

(ii) The identity of the Backup Successful Bidder and the amount and material terms of the Backup Successful Bid shall be announced by the Debtors at the conclusion of the Auction at the same time the Debtors announce the identity of the Successful Bidder. The Backup Bidder shall be required to keep its or their Qualified Bid(s) (or if the Backup Bidder submitted one or more Overbids at the Auction, its final Overbid(s)) open and irrevocable for not less than the period of time described in Section 5.g of these Bidding Procedures.

(iii) For the avoidance of doubt, nothing in these Bidding Procedures shall prevent the Debtors from exercising their fiduciary duties under applicable law.

(iv) The Debtors shall not be required to consider any Bids or Overbids submitted after the conclusion of the Auction and any and all such Bids and Overbids shall be deemed untimely and shall not constitute a Qualified Bid.

(v) Within twenty-four (24) hours after closing the Auction, the Debtors shall cause the definitive asset purchase agreement(s) for the Successful Bid to be filed with the Court.

e. <u>No Collusion; Good Faith Bona Fide Offer</u>.

Each Qualified Bidder participating at the Auction will be required to confirm on the record that: (i) it has not engaged in any collusion with respect to the bidding; and (ii) its Qualified Bid and any successive Overbid is a good faith bona fide offer and it intends to consummate the proposed transaction if selected as the Successful Bidder.

**10.     Backup Successful Bidder**

If a Successful Bidder fails to consummate an approved transaction contemplated by its Successful Bid, following consultation with the Consultation Parties, the Debtors may select the applicable Backup Successful Bidder as the Successful Bidder, and such Backup Successful Bidder shall be deemed a Successful Bidder for all purposes. In such case, the defaulting Successful Bidder's Good Faith Deposit shall be forfeited to the Debtors, and the Debtors specifically reserve the right to seek all available remedies against the defaulting Successful Bidder (or Backup Successful Bidder, if such party shall also breach or fail to perform), as applicable, including with respect to specific performance. The Debtors will be authorized, but not required, to consummate all transactions contemplated by the Bid of such Backup Successful Bidder although the Debtors' shall retain the right, in consultation with the Consultation Parties, to opt to pursue a plan of reorganization instead of consummating a sale transaction with the Backup Successful Bidder by filing a notice with the Court notifying parties-in-interest of such intent. In the event the Debtors elect to proceed with a sale to the Backup Successful Bidder, the Debtors will file a notice of such intent with the Court and request an expedited setting for a status conference to establish appropriate deadlines and procedures for addressing potential objections to adequate assurance and related issues. In the event that the Backup Successful Bidder fails to consummate an approved Sale, the Assets may be sold pursuant to one or more subsequent sales.

**11.     Highest or Otherwise Best Bid**

At all times during the Proposed Sale Process, the Debtors shall retain the right to determine, following consultation with the Consultation Parties, which Bid (or combination of Partial Bids) constitutes the highest or otherwise best offer for the purchase of the Assets and which Bid (or combination of Partial Bids) should be selected as the Successful Bid, if any, all subject to final approval by the Court pursuant to the provisions of Bankruptcy Code § 363(b). Following consultation with the Consultation Parties, the Debtors may adopt rules for the Auction that, in their judgment, will better promote the goals of the Auction and that are not inconsistent in any material respect with any of the other material provisions hereof or of any Court order.

### 12. Proceeds

All valid and properly perfected liens against the Debtors' Assets shall attach to the proceeds of the Sale of such Assets in the same order and priority as they existed in such Assets immediately prior to the Closing.

### 13. Consent to Jurisdiction

All Qualified Bidders at the Auction shall be deemed to have consented to the jurisdiction of the Court and waived any right to a jury trial in connection with any disputes relating to the Auction, the construction and enforcement of these Bidding Procedures, and/or the Confidentiality Agreements, as applicable.

### 14. Sale Hearing

Unless the Debtors decide to pursue a plan of reorganization, a hearing to consider approval of the Sale of all or substantially all of the Assets to the Successful Bidder (the "Sale Hearing") will be held on October 29, 2020 at 9:00 a.m. (Central Time), or as soon thereafter as counsel may be heard, before the Honorable Harlin D. Hale, United States Bankruptcy Judge, at the United States Bankruptcy Court, Northern District of Texas, Earl Cabell Federal Building, 1100 Commerce Street, 14th Floor, Courtroom #3, Dallas, Texas 75242, or before any other judge who may be sitting in his place and stead. Not later than October 26, 2020 at 12:00 p.m. (Central Time), the Debtors will file a notice informing the Court and parties in interest whether they intend to seek approval of a Sale or to pursue a plan of reorganization.[3]

The Sale Hearing may be continued to a later date by the Debtors by sending notice prior to, or making an announcement at, the Sale Hearing. No further notice of any such continuance will be required to be provided to any party.

If held, at the Sale Hearing, the Debtors shall present the Successful Bid to the Court for approval. Following the approval of the Successful Bid at the Sale Hearing, the Debtors will be authorized to take any and all actions necessary and appropriate to complete and implement the Sale(s) contemplated by the Successful Bid, including, without limitation, seeking entry of one or more orders approving such Sale(s).

### 15. Return of Good Faith Deposits

The Good Faith Deposits for each Qualified Bidder shall be held in one or more interest-bearing accounts on terms acceptable to the Debtors in their sole discretion. Except with respect to the Good Faith Deposits of the Successful Bidder and the Successful Backup Bidder, the Debtors shall return the Good Faith Deposits of all Qualified Bidders on or within three (3) business days after the Auction. Upon the return of the Good Faith Deposits, their respective owners shall receive any and all interest that will have accrued thereon. If a Sale to the Successful Bidder (or the Backup Successful Bidder if applicable) is approved by the Court, the Good Faith Deposit(s) of the

---

[3] All rights of the Consultation Parties to object to such a notice shall be reserved and will not be waived, or in any way affected, by the filing of the Debtors' notice.

Successful Bidder (or the Backup Successful Bidder if applicable) shall be applied to the purchase price of such transaction at Closing.

If a Successful Bidder fails to consummate a proposed transaction because of a breach by such Successful Bidder, the Debtors will not have any obligation to return the Good Faith Deposit deposited by such Successful Bidder, which may be retained by the Debtors as liquidated damages, in addition to any and all rights, remedies, and/or causes of action that may be available to the Debtors, and the Debtors shall be free to consummate the proposed transaction with the applicable Backup Successful Bidder in accordance with Section 10 of these Bidding Procedures.

### 16. Reservation of Rights

Notwithstanding any of the foregoing, the Debtors and their estates, in consultation with the Consultation Parties, reserve the right to modify these Bidding Procedures at or prior to the Auction, including, without limitation, to extend the deadlines set forth herein, modify bidding increments, waive terms and conditions set forth herein with respect to any or all Potential Bidders (including, without limitation, the Qualified Bid requirements), impose additional terms and conditions with respect to any or all potential bidders, adjourn or cancel the Auction at or prior to the Auction and/or adjourn the Sale Hearing.

The Debtors shall consult with the Consultation Parties as explicitly provided for in these Bidding Procedures and in connection with any other exercises of their judgment permitted in these Bidding Procedures; provided, however, that the Debtors shall not be required to consult with any Consultation Party (or its advisors) that submits a Bid or has a Bid submitted on its behalf for so long as such Bid remains open, including any credit bid, if the Debtors determine, in their reasonable business judgment, that consulting with such Consultation Party regarding any issue, selection, or determination is (a) likely to have a chilling effect on the potential bidding or (b) otherwise contrary to the goal of maximizing value from the sale process for the Debtors' estates, their creditors, and all other parties in interest.

**Exhibit 2**

**Auction and Sale Notice**

1

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| Tuesday Morning Corporation, *et al.*,[1] | § | Case No. 20-31476-HDH-11 |
| | § | |
| Debtors. | § | Jointly Administered |

## NOTICE OF (I) SOLICITATION OF INITIAL BIDS; (II) BIDDING PROCEDURES; (III) AUCTION; (IV) SALE HEARING AND (V) RELATED RELIEF AND DATES

TO ALL CREDITORS AND OTHER PARTIES IN INTEREST:

PLEASE TAKE NOTICE that the above-captioned debtors and debtors-in-possession (the "Debtors") are soliciting offers for the purchase of substantially all of the Assets and assumption of certain liabilities of the Debtors with respect thereto consistent with the bidding procedures (the "Bidding Procedures") approved by the Bankruptcy Court by entry of an order dated _____ ___, 2020 [Docket No. ___] (the "Bidding Procedures Order"). Potential Bidders interested in bidding on Assets should contact the Debtors' investment banker, Miller Buckfire Attn: James Doak, 787 Seventh Avenue, 5th Floor**,** New York, NY 10019, james.doak@millerbuckfire.com and to Derek Herbert at dherbert@stifel.com, to request a confidentiality agreement. All interested bidders should carefully read the Bidding Procedures and Bidding Procedures Order. To the extent that there are any inconsistencies between this notice and the Bidding Procedures or Bidding Procedures Order, the Bidding Procedures or Bidding Procedures Order, as applicable, shall govern in all respects.

PLEASE TAKE FURTHER NOTICE that, if the Debtors receive more than one qualified bid within the requirements and time frame specified by the Bidding Procedures, the Debtors will hold an auction (the "Auction") to request additional competitive bids from qualified bidders with respect to the Sale of the Assets on October 21, 2020 at 10:00 a.m. (Central Time), by video via Web-Ex link to be provided by the Debtors' counsel, or such later date and time as selected by the Debtors. The Auction shall be conducted in a timely fashion according to the Bidding Procedures.

PLEASE TAKE FURTHER NOTICE that a hearing to consider approval of the Sale of all or substantially all of the Assets to the Successful Bidder (the "Sale Hearing") is presently scheduled to take place on October 29, 2020 at 9:00 a.m. (Central Time), or as soon thereafter as counsel may be heard, before the Honorable Harlin D. Hale, United States Bankruptcy Judge, at the United States Bankruptcy Court, Northern District of Texas, Earl Cabell Federal Building, 1100 Commerce Street, 14th Floor, Courtroom #3, Dallas, Texas 75242, or before any other judge

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Tuesday Morning Corporation (8532) ("TM Corp."); TMI Holdings, Inc. (6658) ("TMI Holdings"); Tuesday Morning, Inc. (2994) ("TMI"); Friday Morning, LLC (3440) ("FM LLC"); Days of the Week, Inc. (4231) ("DOTW"); Nights of the Week, Inc. (7141) ("NOTW"); and Tuesday Morning Partners, Ltd. (4232) ("TMP"). The location of the Debtors' service address is 6250 LBJ Freeway, Dallas, TX 75240.

who may be sitting in his place and stead. Not later than October 26, 2020 at 12:00 p.m. (Central Time), the Debtors will file a notice informing the Court and parties in interest whether they intend to seek approval of a Sale or to pursue a plan of reorganization.

PLEASE TAKE FURTHER NOTICE that, except as otherwise set forth in the Bidding Procedures Order, objections, if any, to the Sale of the Assets, the assumption and assignment of the Contracts, or any relief requested in the Motion other than the relief granted by this Court in the Bidding Procedures Order must be: (a) in writing; (b) signed by counsel or attested to by the objecting party; (c) in conformity with the Bankruptcy Rules and applicable local rules; (d) filed with the Clerk of the Bankruptcy Court for the Northern District of Texas, United States Bankruptcy Court, Northern District of Texas – Dallas Division, Earle Cabell Federal Building, 1100 Commerce St., Rm. 1254, Dallas, Texas, 75242, by no later than 5:00 p.m. (Central Time) on October 14, 2020 (the "General Objection Deadline"); and (e) served in accordance with applicable local rules so as to be received on or before the relevant objection deadline by the following (collectively, the "Objection Notice Parties"): (i) counsel to the Debtors, Ian T. Peck and Jarom J. Yates, Haynes and Boone LLP, 2323 Victory Ave., Suite 700, Dallas, Texas 75182, ian.peck@haynesboone.com and jarom.yates@haynesboone.com; (ii) counsel for the Agent, Bill Wallander, Vinson & Elkins LLP, 2001 Ross Avenue, Suite 3900, Dallas, Texas 75201-2975, bwallander@velaw.com; (iii) counsel for the Committee, (a) Edward Schnitzer, Gilbert Saydah and David Banker, Montgomery McCracken Walker & Rhoads LLP, 437 Madison Avenue, New York, NY 10022, eschnitzer@mmwr.com, gsaydah@mmwr.com and dbanker@mmwr.com and (b) Kevin M. Lippman and Deborah M. Perry, Munsch Hardt Kopf & Harr, P.C., 500 N. Akard Street, Suite 3800 Dallas, Texas 75201-6659, klippman@munsch.com and dperry@munsch.com,; (iv) counsel for the Equity Committee; and (v) Office of the United States Trustee for the Northern District of Texas, 1100 Commerce St # 976, Dallas, TX 75242 (these procedures are collectively referred to as the "General Objection Procedures"). Each objection shall state the legal and factual basis of such objection.

## CONSEQUENCES OF FAILING TO TIMELY MAKE AN OBJECTION

ANY PARTY OR ENTITY WHO FAILS TO TIMELY MAKE AN OBJECTION TO THE SALE ON OR BEFORE THE GENERAL OBJECTION DEADLINE IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO THE SALE, INCLUDING WITH RESPECT TO THE TRANSFER OF THE ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, EXCEPT AS SET FORTH IN THE APPLICABLE PURCHASE AND SALE AGREEMENT RELATED THERETO. IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT CERTAIN OF THE RELIEF REQUESTED IN THE MOTION WITHOUT FURTHER NOTICE OR HEARING.

PLEASE TAKE FURTHER NOTICE that copies of the Motion, and any exhibits thereto, including the Bidding Procedures Order and the Bidding Procedures are available upon request to counsel for the Debtors, Ian T. Peck and Jarom J. Yates, Haynes and Boone LLP, 2323 Victory Ave., Suite 700, Dallas, Texas 75182, ian.peck@haynesboone.com and jarom.yates@haynesboone.com.

Dated: _____ ___, 2020

**Exhibit 3**

**Assumption and Assignment Notice**

1

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| Tuesday Morning Corporation, *et al.*,[1] | § | Case No. 20-31476-HDH-11 |
| | § | |
| Debtors. | § | Jointly Administered |

## NOTICE OF (I) DEBTORS' REQUEST FOR AUTHORITY TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (II) DEBTORS' PROPOSED CURE AMOUNTS

TO ALL COUNTERPARTIES TO EXECUTORY CONTRACTS AND UNEXPIRED LEASES PLEASE TAKE NOTICE THAT:

PLEASE TAKE NOTICE that on May 27, 2020, the above-captioned debtors and debtors-in-possession (the "Debtors"), filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Texas (the "Court").

PLEASE TAKE FURTHER NOTICE that on September 23, 2020, the Debtors filed *Debtors' Expedited Motion Pursuant to Bankruptcy Code §§ 105(a), 363, and 365, and Bankruptcy Rules 2002, 6004, and 6006, for Entry of an Order (A) Approving Sale and Bidding Procedures in Connection with a Potential Sale of Assets of the Debtors, (B) Authorizing the Sale of Assets Free and Clear of All Liens, Claims, Encumbrances, and Other Interests, and (C) Granting Related Relief* [Docket No. 948] (the "Motion") with the Clerk of the Bankruptcy Court seeking, among other things, entry of an order (the "Sale Order") authorizing and approving: (a) the sale of substantially all of its assets (collectively, the "Assets") free and clear of liens, claims, encumbrances and other interests, with all such liens, claims, encumbrances and other interests attaching with the same validity and priority to the sale proceeds, to one or more purchasers submitting the highest or otherwise best offers therefor (the "Sale"); and (b) procedures for the assumption and assignment of executory contracts and unexpired leases (collectively, the "Contracts"). Please note that all capitalized terms used but not defined herein shall have the meanings set forth in the Motion.

PLEASE TAKE FURTHER NOTICE THAT on _____ ___, 2020, the Court entered an order [Docket No. ___] (the "Bidding Procedures Order") granting certain of the relief sought in the Motion, including, among other things, approving: (a) the bidding procedures for the Sale of the Assets (the "Bidding Procedures"); and (b) procedures for the assumption and assignment of



[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Tuesday Morning Corporation (8532) ("TM Corp."); TMI Holdings, Inc. (6658) ("TMI Holdings"); Tuesday Morning, Inc. (2994) ("TMI"); Friday Morning, LLC (3440) ("FM LLC"); Days of the Week, Inc. (4231) ("DOTW"); Nights of the Week, Inc. (7141) ("NOTW"); and Tuesday Morning Partners, Ltd. (4232) ("TMP"). The location of the Debtors' service address is 6250 LBJ Freeway, Dallas, TX 75240.

Contracts (the "Assumption and Assignment Procedures"). Copies of the Bidding Procedures Order (which incorporates the Assumption and Assignment Procedures and the Bidding Procedures) are enclosed herein.

PLEASE TAKE FURTHER NOTICE that, unless the Debtors opt to pursue a plan of reorganization, the Debtors will seek approval of the Sale at a hearing presently scheduled to take place on October 29, 2020 at 9:00 a.m. (Central Time), or as soon thereafter as counsel may be heard, before the Honorable Harlin D. Hale, United States Bankruptcy Judge, at the United States Bankruptcy Court, Northern District of Texas, Earl Cabell Federal Building, 1100 Commerce Street, 14th Floor, Courtroom #3, Dallas, Texas 75242, or before any other judge who may be sitting in his place and stead (the "Sale Hearing"). Not later than October 26, 2020 at 12:00 p.m. (Central Time), the Debtors will file a notice informing the Court and parties in interest whether they intend to seek approval of a Sale or to pursue a plan of reorganization.

PLEASE TAKE FURTHER NOTICE THAT at the Sale Hearing, the Debtors may seek to assume and assign to the Successful Bidder for the Assets at the Auction (as defined in the Bidding Procedures Order) (each an "Assignee") some or all of the Contracts and any modifications thereto set forth on **Exhibit A** hereto (collectively, the "Assumed and Assigned Contracts"). In addition, the Debtors' calculation of the cure amounts, if any, necessary for the assumption and assignment of the Assumed and Assigned Contracts (the "Cure Amounts") are set forth on **Exhibit A**.

PLEASE TAKE FURTHER NOTICE THAT within twenty-four (24) hours after the conclusion of the Auction, the Debtors shall file with the Court and serve by first-class mail, facsimile, electronic transmission, or overnight mail on the Contract Counterparty (and its attorney, if known) to each Assumed and Assigned Contract a notice: (a) identifying the Successful Bidder; (b) stating which Contract(s) will be assumed and assigned thereto; and (c) containing a statement as to the Successful Bidder's ability to perform the Debtor's obligations under the applicable Assumed and Assigned Contracts.

PARTIES LISTED ON **EXHIBIT A** HERETO ARE RECEIVING THIS NOTICE BECAUSE THE DEBTORS, OR OTHER POTENTIAL BIDDER(S), HAVE IDENTIFIED THEM AS A POTENTIAL COUNTERPARTY TO AN ASSUMED AND ASSIGNED CONTRACT. Under the terms of the Assumption and Assignment Procedures, if at any time after the entry of the Bidding Procedures Order the Debtors identify additional prepetition executory Contracts and/or Leases to be assumed and assigned to the Purchaser as Assumed and Assigned Contracts (whether before or after closing of any Sale(s) of relevant Assets), the Debtors shall serve a supplemental Assumption and Assignment Notice by first-class mail, facsimile, electronic transmission, or overnight mail on the Contract Counterparty (and its attorney, if known) to each supplemental Assumed and Assigned Contract at the last known address available to the Debtors by no later than ten (10) days before the proposed effective date of the assignment. Such Contract Counterparty shall have a period of ten (10) days from receipt of the supplemental Assumption and Assignment Notice to file with the Court any objection to the proposed cure amount, adequate assurance, or the assumption and assignment of such Contract(s), as applicable, as will be set forth in the supplemental Assumption and Assignment Notice.

**Obtaining Additional Information**

Additional copies of the Motion, the Bidding Procedures Order, the Bidding Procedures and any other related documents are available upon request to counsel for the Debtors Ian T. Peck and Jarom J. Yates, Haynes and Boone LLP, 2323 Victory Ave., Suite 700, Dallas, Texas 75182, ian.peck@haynesboone.com and jarom.yates@haynesboone.com.

**Assumed and Assigned Contract Objection Procedures**

Pursuant to the Assumption and Assignment Procedures, except for objections to the provision of adequate assurance of future performance under any Assumed and Assigned Contract pursuant to Bankruptcy Code § 365 ("Adequate Assurance") all objections to the assumption and assignment of any Lease or Contract, including without limitation any objection to the Debtors' proposed Cure Amount (other than objections filed in response to any supplemental Assumption and Assignment Notice, as set forth above) must: (a) be in writing; (b) be signed by counsel or attested to by the objecting party; (c) be in conformity with the Bankruptcy Rules and applicable local rules; (d) be filed with the Clerk of the Bankruptcy Court for the Northern District of Texas, United States Bankruptcy Court, Northern District of Texas – Dallas Division, Earle Cabell Federal Building, 1100 Commerce St., Rm. 1254, Dallas, Texas, 75242, by no later than 5:00 p.m. (Central Time) on October 14, 2020; (e) be served in accordance with applicable local rules so as to be received on or before the relevant objection deadline by the following: (i) counsel to the Debtors, Ian T. Peck and Jarom J. Yates, Haynes and Boone LLP, 2323 Victory Ave., Suite 700, Dallas, Texas 75182, ian.peck@haynesboone.com and jarom.yates@haynesboone.com; (ii) counsel for the Agent, Bill Wallander, Vinson & Elkins LLP, 2001 Ross Avenue, Suite 3900, Dallas, Texas 75201-2975, bwallander@velaw.com; (iii) counsel for the Committee, (a) Edward Schnitzer, Gilbert Saydah and David Banker, Montgomery McCracken Walker & Rhoads LLP, 437 Madison Avenue, New York, NY 10022, eschnitzer@mmwr.com, gsaydah@mmwr.com and dbanker@mmwr.com and (b) Kevin M. Lippman and Deborah M. Perry, Munsch Hardt Kopf & Harr, P.C., 500 N. Akard Street, Suite 3800 Dallas, Texas 75201-6659, klippman@munsch.com and dperry@munsch.com,; (iv) counsel for the Equity Committee; and (v) Office of the United States Trustee for the Northern District of Texas, 1100 Commerce St # 976, Dallas, TX 75242 (f) identify the Lease or Contract to which the objector is party; (g) describe with particularity any cure the claimant contends is required under Bankruptcy Code § 365 (the "Cure Claim") and identify the basis(es) of the alleged Cure Claim under the Contract or Lease; and (h) attach all documents supporting or evidencing the Cure Claim;.

Objections to Adequate Assurance must (a) be in writing; (b) be signed by counsel or attested to by the objecting party; (c) be in conformity with the Bankruptcy Rules and applicable local rules; (d) be filed with the Clerk of the Bankruptcy Court for the Northern District of Texas, United States Bankruptcy Court, Northern District of Texas – Dallas Division, Earle Cabell Federal Building, 1100 Commerce St., Rm. 1254, Dallas, Texas, 75242, by no later than 12:00 p.m. (Central Time) on October 28, 2020; (e) be served in accordance with applicable local rules so as to be received on or before the relevant objection deadline by the following: (i) counsel to the Debtors, Ian T. Peck and Jarom J. Yates, Haynes and Boone LLP, 2323 Victory Ave., Suite 700, Dallas, Texas 75182, ian.peck@haynesboone.com jarom.yates@haynesboone.com; (ii) counsel for the Agent, Bill Wallander, Vinson & Elkins LLP, 2001 Ross Avenue, Suite 3900, Dallas, Texas 75201-2975, bwallander@velaw.com; (iii) counsel for the Committee, (a) Edward

Schnitzer, Gilbert Saydah and David Banker, Montgomery McCracken Walker & Rhoads LLP, 437 Madison Avenue, New York, NY 10022, eschnitzer@mmwr.com, gsaydah@mmwr.com and dbanker@mmwr.com and (b) Kevin M. Lippman and Deborah M. Perry, Munsch Hardt Kopf & Harr, P.C., 500 N. Akard Street, Suite 3800 Dallas, Texas 75201-6659, klippman@munsch.com and dperry@munsch.com,; (iv) counsel for the Equity Committee; and (v) Office of the United States Trustee for the Northern District of Texas, 1100 Commerce St # 976, Dallas, TX 75242; (f) identify the Lease or Contract to which the objector is party; (g) state with specificity what the objecting party believes is required to provide Adequate Assurance; and (h) attach all documents in support of the objection.

### CONSEQUENCES OF FAILING TO TIMELY FILE AND SERVE AN OBJECTION

ANY COUNTERPARTY TO AN ASSUMED AND ASSIGNED CONTRACT WHO FAILS TO TIMELY FILE AND SERVE AN OBJECTION TO THE PROPOSED ASSUMPTION AND ASSIGNMENT OF AN ASSUMED AND ASSIGNED CONTRACT AND/OR THE CURE AMOUNT SET FORTH ON EXHIBIT A IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER AND THE ASSUMPTION AND ASSIGNMENT PROCEDURES SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO THE ASSUMPTION AND ASSIGNMENT OF THE ASSUMED AND ASSIGNED CONTRACT AND/OR THE CURE AMOUNT SET FORTH ON EXHIBIT A, INCLUDING ASSERTING ADDITIONAL CURE AMOUNTS WITH RESPECT TO THE ASSUMED AND ASSIGNED CONTRACT RELATING TO ANY PERIOD PRIOR TO THE TIME OF ASSUMPTION AND ASSIGNMENT.

Dated: _____ ___, 2020

**EXHIBIT A**

**Cure Amount Schedule**

1

| Contract Counterparty | Applicable Debtor | Description of Contract or Lease | Proposed Cure Amount |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |