# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| In re:<br><br>TUESDAY MORNING CORPORATION, *et al.*[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 20-31476-HDH-11<br><br>Jointly Administered<br><br>Ref. ECF Nos. 1413, 1495, 1497<br><br>Hearing Date: November 12, 2020 at 9:30 a.m. (CT)<br><br>Response Deadline: November 10, 2020 at 4:00 p.m. (CT) |

**LIMITED OBJECTION TO DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) APPROVING THE DISCLOSURE STATEMENT, (II) FIXING A RECORD DATE, (III) APPROVING CURE PROCEDURES, (IV) APPROVING SOLICITATION PROCEDURES, (V) APPROVING FORM OF BALLOT AND ESTABLISHING VOTING PROCEDURES, AND (VI) ESTABLISHING NOTICE AND OBJECTION PROCEDURES WITH RESPECT TO CONFIRMATION OF THE DEBTORS' CHAPTER 11 PLAN OF REORGANIZATION**

Invictus Global Management, LLC ("**Invictus**"), by and through its undersigned counsel, hereby files this limited objection ("**Objection**") to the *Debtors' Motion for Entry of an Order (I) Approving the Disclosure Statement, (II) Fixing a Record Date, (III) Approving Cure Procedures, (IV) Approving Solicitation Procedures, (V) Approving Form of Ballot and Establishing Voting Procedures, and (VI) Establishing Notice and Objection Procedures with Respect to Confirmation of the Debtors' Chapter 11 Plan of Reorganization* [ECF No. 1413] (the "**Disclosure Statement Motion**," and the disclosure statement referenced therein, the "**Disclosure Statement**").[2] In support hereof, Invictus respectfully states as follows:

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Tuesday Morning Corporation (8532); TMI Holdings, Inc. (6658); Tuesday Morning, Inc. (2994); Friday Morning, LLC (3440); Days of the Week, Inc. (4231); Nights of the Week, Inc. (7141); and Tuesday Morning Partners, Ltd. (4232). The location of the Debtors' service address is 6250 LBJ Freeway, Dallas, TX 75240.

[2] Capitalized terms used herein but not otherwise defined shall have the meaning ascribed to them in the Disclosure Statement.

1. Invictus holds more than $6 million in Class 5 general unsecured claims against the Debtors and, on information and belief, is among one of the largest unsecured creditors in these cases. Invictus files this Objection for two principal reasons: *first*, to articulate its concerns regarding the current proposed treatment of Class 5 general unsecured claims under the Debtors' proposed Plan (which, unless modified consistent herewith, would render the Plan unconfirmable); *second*, to identify certain critical information that the Disclosure Statement presently lacks.

2. Prior to filing this Objection, Invictus attempted to engage the Debtors (and other stakeholders) on a modified plan construct and funding mechanic that, if accepted, would address the issues raised herein and provide a significantly better (and the legally required) treatment for Class 5 general unsecured creditors (*i.e.*, a full cash-out option and post-petition interest at the applicable contract (or state law) rate, rather than the *de minimis* federal judgment rate). The lack of any disclosure regarding these discussions is part and parcel of the Disclosure Statement's material informational deficiencies. Invictus has also discussed the issues raised herein with the Committee. Invictus is disappointed that the Committee has not yet indicated a willingness to address the concerns identified herein, and so Invictus was compelled to file this Objection.

**OBJECTION**

3. The Debtors estimate the aggregate amount of Class 5 general unsecured claims at $116.7 million. See Disclosure Statement at 3, 49. Under the Plan, the Debtors propose that each holder of an allowed Class 5 general unsecured claim would receive such holder's *pro rata* share of (i) the General Unsecured Cash Fund (*i.e.*, a cash amount equal to $61.3 million), (ii) the "General Unsecured Notes," and (iii) the proceeds of the Rights Offering. See Chapter 11 Plan

Art. II.D.5. The "General Unsecured Notes" are notes to be issued by the Debtors in the principal amount of $25 million, which amount is subject to potential increase or decrease, as necessary, to enable the Debtors to pay the holders of allowed Class 5 claims the principal amount of their claims plus interest "at the federal judgment rate" from the Petition Date through the Effective Date. See Chapter 11 Plan, Exh. A, at 9.

4.  According to the Debtors, this proposed treatment would result in allowed Class 5 claims purportedly being paid "in full" under the Plan. Meanwhile, the Plan provides for the Debtors' existing equity holders to receive new common equity in the reorganized Debtors plus the ability to participate in the rights offering in exchange for their existing equity interests. See Chapter 11 Plan Art. II.D.8.

5.  The proposed treatment for Class 5 general unsecured claims raises significant issues of law and fact that, unless adequately addressed, would render the Plan unconfirmable and, thus, approval of the Disclosure Statement, at this time, inappropriate. See In re EQK Bridgeview Plaza, Inc., No. 10-37054-SGJ-11, 2011 WL 2458068, at *2 (Bankr. N.D. Tex. June 16, 2011) (declining to approve debtor's disclosure statement on the basis that the plan it described was patently unconfirmable); see also In re U.S. Brass Corp., 194 B.R. 420, 422 (Bankr. E.D. Tex. 1996) ("Disapproval of the adequacy of a disclosure statement may sometimes be appropriate where it describes a plan of reorganization which is so fatally flawed that confirmation is impossible.").

6.  Contrary to the Debtors' contention, the proposed treatment does not provide for the payment "in full" of (or a "100% recovery" for) allowed Class 5 claims. This is so because the Debtors find themselves in the fortunate position of being solvent. And, a Chapter 11 plan

for a solvent debtor implicates an important and long-standing equitable principle embedded within bankruptcy jurisprudence—the "solvent-debtor exception."

7. In a thorough and well-reasoned recent opinion in the Ultra Petroleum bankruptcy cases, Judge Isgur explained the "solvent-debtor exception" and the foundational bankruptcy principles undergirding it at length. See In re Ultra Petroleum Corp., Case No. 16-32202 (MI), Bankr. S.D. Tex., Oct. 27, 2020 [ECF No. 1874].³ Pursuant to this doctrine, "absent compelling equitable considerations, when a debtor is solvent, it is the role of the bankruptcy court to enforce the creditors' contractual rights." Id. at 27 (quoting In re Dow Corning Corp., 456 F.3d 668, 679 (6th Cir. 2006)). Before a debtor's equity holders can receive any residual distribution from the estates on account of their equity interests, the "solvent-debtor exception" requires that each of the debtor's creditors receive the full benefit of its contractual bargain. See Ultra Petroleum, at 30 (explaining that pre-Bankruptcy Code Fifth Circuit precedent required solvent debtors to "pay their debts in full, principal and interest to the time of payment, whenever the assets of the estate are sufficient.") (citing Johnson v. Norris, 190 F. 459, 466 (5th Cir. 1911)). "The rationale for the exception is as obvious as it is uncontroversial: an individual with the means to pay his debts in full should be required to do so." Id.

8. Relevant, here, is the impact of the "solvent-debtor exception" on the appropriate calculation of post-petition interest for Class 5 general unsecured claims. As noted above, the Debtors intend to calculate post-petition interest at the federal judgment rate, rather than at the applicable contract (or state law) rate. The savings in interest expense resulting from applying the *de minimis* federal judgment rate will inure to the benefit of the Debtors' equity holders, who appear to be receiving significant value under the Plan on account of their existing equity

---

³ Judge Isgur's opinion in Ultra Petroleum can be accessed at https://dm.epiq11.com/case/ultra/dockets.

4

interests. It appears that the majority of Class 5 creditors are trade claimants and landlords whose claims originate from contract or state law obligations. Rather than paying Class 5 creditors the full amount due under their applicable contracts or state law—as required by the "solvent-debtor exception"—the Debtors propose to pay such creditors less than the full amount of their allowed claims by imposing a significantly lower interest rate. The economic benefit of this reduced interest expense would flow to the Debtors' equity holders, who would reap an unjust windfall at the expense of the Debtors' Class 5 creditors. This proposed treatment and transfer of value plainly violates the "solvent-debtor exception." As Judge Isgur explained:

> [L]imiting the Class 4 Claimants to interest at the federal judgment rate contravenes the purpose of the solvent-debtor exception. The underlying purpose of the exception, recognized for nearly three hundred years, is that a debtor must repay its debts in full when it has the means to do so. This means that when a debtor is solvent, "a bankruptcy court's role is merely to enforce the contractual rights of the parties." Limiting post-petition interest to the federal judgment rate would not enforce the contractual rights of the parties in this case. Instead, it would curtail the Class 4 Claimants' recovery, while allowing Ultra and its equity holders to escape bankruptcy with a windfall.

Ultra Petroleum, at 42 (citing In re Dow Corning, 456 F.3d at 679).

9. The form of consideration to be paid to the holders of allowed Class 5 claims raises additional concerns. A material portion of the Class 5 distribution (potentially more than one-fifth) would come in the form of the General Unsecured Notes. Among other things, these notes, which would be largely illiquid, shift a significant amount of risk (including the risk associated with a subsequent potential bankruptcy filing) to unsecured creditors and away from the Debtors' equity holders, constituting another windfall for the Debtors' equity holders at the expense of Class 5 creditors. As noted, the Debtors' unsecured creditor body appears to consist mainly of trade and landlord claimants, most of whom did not bargain to hold (and may not be able to hold) securities with inherent financial market risks.

10. Invictus has attempted to engage the Debtors on a modified plan construct and funding mechanic pursuant to which allowed Class 5 claims would be truly paid in full—including post-petition interest at the applicable contractual (or state law) rate—and completely in cash (*i.e.*, not through the issuance of an illiquid note). The Debtors and other case constituents, however, have not meaningfully engaged Invictus in respect of this construct. Consistent with the "solvent-debtor exception," this potential alternative would provide the required treatment for allowed Class 5 claims—*i.e.*, full cash-out option with post-petition interest at applicable contractual (or state law) rate—albeit at the expense of the current proposed treatment for the Debtors' equity holders. Given this, Invictus is concerned that stakeholders with existing equity interests (including members of management and the Board) may be disinclined to meaningfully engage on the potential alternative transaction. In this regard, it bears emphasizing that the "solvent-debtor exception" was expressly intended to protect creditors in the equitable "tug-of-war" that arises between creditors and equity holders in the context of a solvent estate. See Ultra Petroleum, at 32 ("Instead, when the debtor is solvent, the equitable tug exists between unsecured creditors and the debtor's equity holders. The solvent-debtor exception ensures that the debtor does not receive a windfall at the expense of its creditors.") (citing In re Carter, 220 B.R. 411, 416-17 (Bankr. D.N.M. 1998) ("[I]f the Court were to modify the originally contracted for [default] interest rate..., it would result in a windfall to the Debtor ... at the [creditors'] expense.").

11. Importantly, the Disclosure Statement contains no information regarding Invictus's efforts to engage with the Debtors on potential alternative plan constructs. The holders of Class 5 claims, at a minimum, should be provided adequate information regarding

6

Invictus's efforts to better enable the holders of Class 5 claims to make an informed decision whether to reject the Debtors' proposed Plan.

12. Moreover, the Disclosure Statement lacks additional material information that creditors require in order to make an informed decision with respect to the Plan. Approval of a disclosure statement requires a debtor to provide "adequate information." See 11 U.S.C. § 1125(a). The Bankruptcy Code defines "adequate information" as "information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan." See id.

13. The determination of what constitutes adequate information is made on a case by case basis. See In re Applegate Prop., Ltd., 133 B.R. 827, 829 (Bankr. W.D. Tex. 1991) ("The issue of adequate information is usually decided on a case by case basis and is left largely to the discretion of the bankruptcy court."). In determining whether a disclosure statement contains adequate information, courts look to, among other things, financial information, valuations, and projections relevant to the decision whether to accept or reject the plan; information relevant to the risks posed under the plan; and the actual or projected realizable value of the Debtors' assets. See In re U.S. Brass Corp., 194 B.R. 420, 424-25 (Bankr. E.D. Tex. 1996).

14. To the extent that a disclosure statement lacks information necessary for a proper evaluation of the proposed plan, then the disclosure statement cannot be approved. See In re Divine Ripe, L.L.C., 554 B.R. 395, 405–13 (Bankr. S.D. Tex. 2016) (rejecting disclosure statement as lacking adequate information regarding, among other things, projections and financial information); In re Fullmer, No. 09-50086-RLJ-11, 2009 WL 2778303, at *2 (Bankr.

N.D. Tex. Sept. 2, 2009) (rejecting disclosure statement that contained inadequate information about settlement); Applegate Prop., 133 B.R. at 829–32 (rejecting disclosure statement for failing to disclose that insider had acquired claims to control voting on debtor's plan).

15. Here, in addition to adequate information regarding Invictus's efforts to put forth a materially better proposal for Class 5 creditors, the Disclosure Statement lacks adequate information regarding the following:

(i) The value of any bids or indications of interest received in connection with the Debtors' sale process and the proposed treatment of unsecured claims in respect of any such bids;

(ii) The feasibility of the Debtors' plan and go-forward business, which is particularly important given that the Debtors propose to make the holders of Class 5 claims involuntary financial investors in their business going forward, with intrinsic business risk being borne by such creditors;

(iii) The negotiation of the rights offering and backstop agreements; and

(iv) The going-concern value of the Debtors' business and operations.

## RESERVATION OF RIGHTS

16. Invictus continues to analyze the recently-filed amended Disclosure Statement and Plan and reserves the right to supplement this Objection at or prior to the hearing on the Disclosure Statement Motion. Moreover, Invictus reserves all rights with respect to the Debtors' proposed Chapter 11 Plan, including, without limitation, the right to object to the Plan on any applicable basis (including, but not limited to, the issues raised herein), the right to obtain discovery with respect to the Plan, and the right to appear and be heard at the Plan confirmation hearing.

**CONCLUSION**

**WHEREFORE**, for the reasons set forth above, Invictus respectfully requests that the Court deny the relief requested in the Disclosure Statement Motion and grant to Invictus such other or further relief as the Court deems just and proper.

Dated: November 10, 2020

                                                **NELIGAN LLP**

                                                */s/ Douglas J. Buncher*

Douglas J. Buncher
325 N.St. Paul Street, Suite 3600
Dallas, TX 75201
Telephone: (214) 840-5300
Email: dbuncher@neliganlaw.com

-and-

**BROWN RUDNICK LLP**
Steven D. Pohl
Andreas P. Andromalos
One Financial Center
Boston, Massachusetts 02111
Telephone: (617) 856-8200
email: spohl@brownrudnick.com
        aandromalos@brownrudnick.com

-and-

Andrew M. Carty
Seven Times Square
New York, New York
Telephone: (212) 209-4800
email: acarty@brownrudnick.com

*Counsel to Invictus Global Management, LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 10th day of November 2020 a true and correct copy of the foregoing was served electronically via this Court's CM/ECF notification system.

                                               *Douglas J. Buncher*
                                               Douglas J. Buncher