Vincent P. Slusher
State Bar No. 785480
Kristen L. Perry
State Bar No. 24090015
**FAEGRE DRINKER BIDDLE & REATH LLP**
1717 Main Street, Ste. 5400
Dallas, TX 75201-7367
Telephone (469) 357-2500
Facsimile (469) 327-0860
E-mail: vince.slusher@faegredrinker.com
E-mail: kristen.perry@faegredrinker.com

James H. Millar
Faegre Drinker Biddle & Reath LLP
1177 Avenue of the Americas, 41st Floor
New York, NY 10036-2714
Telephone: (212) 248-3140
Facsimile: (212) 248-3141
james.millar@faegredrinker.com

*Admitted Pro Hac Vice*

*Attorneys for the Trade Claimants Committee*

# IN THE UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **In Re:** § § | | **Chapter 11** |
| **TUESDAY MORNING CORPORATION**[1], § § | | **Case No. 20-31476-HDH-11** |
| **DEBTORS.** § § § | | **Jointly Administered** |
| | | **Ref. ECF Nos. 1413, 1495, 1497 and 1541** |

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Tuesday Morning Corporation (8532) ("TM Corp."); TMI Holdings, Inc. (6658) ("TMI Holdings"); Tuesday Morning, Inc. (2994) ("TMI"); Friday Morning, LLC (3440) ("FM LLC"); Days of the Week, Inc. (4231) ("DOTW"); Nights of the Week, Inc. (7141) ("NOTW"); and Tuesday Morning Partners, Ltd. (4232) ("TMP"). The location of the Debtors' service address is 6250 LBJ Freeway, Dallas, TX 75240.

- 1 -

**TRADE CLAIMANT COMMITTEE'S PRELIMINARY OBJECTION TO DEBTORS' REVISED SECOND AMENDED JOINT PLAN OF REORGANIZATION OF TUESDAY MORNING CORPORATION, *ET AL.*, PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (SOLICITATION VERSION) [DKT. NO. 1633]**

The Trade Claimants Committee (the "TCC") [2] files this preliminary objection (the "Objection") to *Debtors' Revised Second Amended Joint Plan of Reorganization of Tuesday Morning Corporation, Et. Al., Pursuant to Chapter 11 of the Bankruptcy Code (Solicitation Version)* (the "Plan") [Docket No. 1633], and in support thereof, respectfully sets forth the TCC's views on the appropriate rate of post-petition interest payable on unsecured creditors under a Plan in these cases.

## PRELIMINARY STATEMENT

1. As concerned creditors with a vested economic interest in ensuring that other trade claimants are not inadvertently lulled into waiving critical protections of the "absolute priority rule," the TCC files this Objection for two critical purposes:

2. ***First,*** to object to the Plan providing creditors a mere 0.16% in the form of post-petition interest at the federal judgment rate when creditors are entitled to potentially 18% under contract or state rates[3] under the solvent-debtor exception, which is intended to ensure that a solvent debtor pays its creditors ***in full*** (by reference to state law) before the debtor (i.e., equity) may recover a surplus.[4]

3. ***Second***, make clear on the record that the statutory committee of unsecured creditors (the "UCC") is taking a position against the interests of its constituency with its

---

[2] The TCC is comprised of the following undersigned holders, or investment managers or funds or accounts holding an interest in trade claims up to $20 million against Debtors: (a) Invictus Global Management, LLC; (b) Bradford Capital Management, LLC; and (c) Contrarian Funds, L.L.C.; and (d) Hain Capital Group, LLC.
[3] *See* Tex. Fin. Code §§ 304.002-304.003.
[4] It is interesting that the Debtors arbitrarily selected the Petition Date as the trigger date for the federal judgment interest rate. Currently, the federal judgment interest rate is 2.59%. The date arbitrarily selected by Debtors was in the height of the global pandemic and at a point in time when the federal judgment rate was uncharacteristically low.

recommendation set forth as Exhibit G to the Disclosure Statement[5] in which it urges Class 5 Claimants to vote in favor of the Plan. The impact of such vote would be to waive the safeguards of the Bankruptcy Code and provide equity with a wind-fall to the detriment of general unsecured holders. In response to the Disclosure Statement objections regarding the appropriate interest rate, the Debtors clearly contemplated the possibility of being required to pay a higher interest rate in the face of creditor objections (*without* risk that the Plan does not proceed as filed). This is spelled out in the Disclosure Statement where the Debtors provide that:

**In the event that the Bankruptcy Court determines that the Debtors are obligated to pay interest to holders of Allowed General Unsecured Claims at the contract rate or state law rate rather than the federal judgment rate the Debtors will modify the Plan accordingly.**

Disclosure Statement at 53.

4. The purpose of voting against the Plan is to ensure that Class 5 holders are entitled to argue for their legal entitlements at confirmation, which entitlements, if granted by the Court, would only require the Debtors to pay the unsecured creditors in full before equity is entitled to any recovery. The Debtors expect to proceed with confirmation of the Plan even if the Court imposes a higher rate. Alternatively, if the mere requirement of paying the legal rate of interest under the solvent-debtor exception should cause the Plan to fail, then the Plan may be flawed in other ways (including feasibility). Moreover, the imposition of the appropriate rate of interest (more than a mere 0.16% federal judgment rate) would ensure that Debtors resolve claims expeditiously as the Plan provides for post-petition interest through payment date. Instead of protecting these basic legal entitlements, the UCC has decided to urge holders to waive these rights and shift significant value to equity while retaining risks for general unsecured holders. In contrast

---

[5] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Plan.

to the UCC, the TCC **believes it is in the best interest of Class 5 general unsecured claims holders to vote against the Plan.**

5. It is a longstanding rule in the Fifth Circuit and other circuits that creditors of a solvent estate have a presumptive right to be paid post-petition interest at the "non-bankruptcy" rate before value can be distributed to a debtor's equity holders. *See In re Ultra Petroleum,* at 30. This rule has deep roots in bankruptcy law and finds its modern-day expression in the absolute priority rule embedded in the "fair and equitable" requirement of Bankruptcy Code § 1129(b).

6. Pursuant to Bankruptcy Code § 1129(b), a plan proponent seeking to cram down a plan on a non-consenting class of creditors must satisfy the "fair and equitable" requirement, embodying the absolute priority rule. In analyzing whether a plan meets the fair and equitable requirement with respect to the payment of post-petition interest, courts presumptively enforce contract interest (including default rates). It is essential to enforcement of the absolute priority rule that equity holders do not receive any recovery unless and until all creditors are truly "paid in full." Courts recognize that to do otherwise would be to create a windfall for equity at the expense of creditors.

7. The Debtors estimate that the aggregate amount of Class 5 general unsecured claims is $125,000,000 million. *See* Revised Second Amended Disclosure Statement at 4. Under the Plan, the Debtors propose that each holder of an allowed Class 5 general unsecured claim would receive payment in full of its Allowed Class 5 Claim from the General Unsecured Cash Fund with interest from the Petition Date through the payment date at the federal judgment rate in effect as of the Petition Date. *See* Plan Art. III.D.5.

8. According to the Debtors, this proposed treatment will result in allowed Class 5 claims being paid "in full" under the Plan. Meanwhile, the Plan provides for the Debtors' existing

equity holders to receive new common equity in the reorganized Debtors plus the ability to participate in the rights offering in exchange for their existing equity interests. *See* Plan. Art. III.D.7. The proposed treatment for Class 5 general unsecured claims raises significant issues of law and fact that, unless adequately addressed, will render the Plan unconfirmable.

9. There is no question that unsecured creditors of a solvent debtor are entitled to post-petition interest. The Plan in these cases recognizes this and provides for the payment of some amount of post-petition interest, but it does not achieve the legal requirement of payment in full where the rate is a mere pittance (0.16%) compared with the legal entitlement of creditors to receive up to 18%. Thus, the issue is not whether unsecured creditors are entitled to post-petition interest, but rather the rate at which such interest must be paid for the plan to be confirmed.

10. The Plan does not provide for payment of interest at the contract rate (or the state law rate) to unsecured claims holders as required in solvent debtor cases such as this one. If confirmed, the Plan will result in a windfall for equity at the expense of creditors: unsecured creditors (most of whom are small business owners) are essentially extending credit to the Debtors during the global pandemic for the benefit of equity holders. To preserve the rights and legal safeguards afforded to creditors by § 1129(b) of the Bankruptcy Code, including the absolute priority rule, all Class 5 Claimants should vote to reject the Plan so that the Court has the opportunity to undertake the foregoing analysis with respect to the appropriate judgment rate payable to Class 5 Claimants.

**RELEVANT BACKGROUND**

11. On May 27, 2020 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") commencing the above captioned jointly administered cases (the "Chapter 11 Cases"). The Debtors continue to

operate their businesses and manage their properties as debtors in possession pursuant to §s 1107(a) and 1108 of the Bankruptcy Code.

12. On September 23, 2020, Debtors filed their *Joint Plan of Reorganization of Tuesday Morning Corporation, et. al., Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 947] and *Disclosure Statement in Support of the Joint Plan of Reorganization of Tuesday Morning Corporate, et. al. Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 946]. On November 4, 2020, Debtors filed their *First Amended Joint Plan of Reorganization of Tuesday Morning Corporation, et. al., Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1494] and *Disclosure Statement in Support of the First Amended Joint Plan of Reorganization of Tuesday Morning Corporate, et. al. Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1495].

13. On November 10, 2020, Invictus Global Management, LLC filed its *Limited Objection to Debtors' Motion for Entry of an Order (I) Approving the Disclosure Statement, (II) Fixing A Record Date, (III) Approving Cure Procedures, (IV) Approving Solicitation Procedures, (V) Approving Form of Ballot and Establishing Voting Procedures, (V) Approving Form of Ballot and Establishing Voting Procedures, and (VI) Establishing Notice and Objection Procedures With Respect to Confirmation of the Debtors' Plan of Reorganization*, the ("Invictus Objection") [Docket No. 1547]. On November 15, 2020, the TCC filed a Joinder to the Invictus Objection. [Docket No. 1575].

14. On November 15, 2020, Debtors filed their *Second Amended Joint Plan of Reorganization of Tuesday Morning Corporation, et. al., Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1577] and *Disclosure Statement in Support of the First Amended Joint Plan of Reorganization of Tuesday Morning Corporate, et. al. Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1578]

- 6 -
US.130262265.01

15. On November 18, 2020, Debtors filed their *Revised Second Amended Joint Plan of Reorganization of Tuesday Morning Corporation, et. al., Pursuant to Chapter 11 of the Bankruptcy Code* (the "Plan") [Docket No. 1633] and *Revised Disclosure Statement in Support of the First Amended Joint Plan of Reorganization of Tuesday Morning Corporate, et. al. Pursuant to Chapter 11 of the Bankruptcy Code* (the "Disclosure Statement") [Docket No. 1634].

16. A hearing on Debtors' proposed disclosure statement was held on November 15, 2020. At the hearing, the TCC argued that the Debtors' proposed disclosure statement was deficient because it did not advise creditors that voting in favor of the plan could prevent them from arguing for a different interest rate, and thus payment in full. As a result, the Court held that the following language should be included in the Disclosure Statement:

> "The Creditors Committee and certain creditors (including Invictus Global Management) holding a total of approximately $20 million in debt (acquired through claims purchases whereby they provided immediate liquidity to vendors and landlords) objected to the Disclosure Statement on the basis that the Plan does not provide for the payment of interest at the contract rate (or the state law rate) to holders of Allowed General Unsecured Claims [See Docket Nos. 1541, 1575 and 1578]. ***These creditors believe that voting in favor of the Plan limits and impacts the total recovery any unsecured creditor is entitled to under the Bankruptcy Code by effective a waiver of the legal safeguard afforded to creditors by § 1129)b) of the Bankruptcy Code (including the "absolute priority rule.").***
>
> If holders of Class 5 General Unsecured Claims vote in favor of the Plan they will be paid the full principal amount of their claim and paid at least the federal judgment rate of interest (a rate that is lower than contract or state law rates) on that claim if the Plan is confirmed, however, by voting in favor of the plan holders may waive their right to successfully seek interest at a rate higher than the federal judgement rate at the Confirmation Hearing. Moreover, if Class 5 votes in favor of the Plan, holders of Class 5 General Unsecured Claims may not be able to successfully argue at the Confirmation Hearing that a higher interest rate than the federal judgment rate should apply (as well as other relevant Plan treatment), and such holders will have more limited arguments than the arguments that holders of Class 5 General Unsecured Claims could otherwise make under Bankruptcy Code § 1129 if Class 5 votes to reject the Plan. For example, if Class 5 votes in favor of the Plan the absolute priority protections afforded to a nonconsenting class of unsecured creditors under Bankruptcy Code § 1129(b) will not be available to holders of Class 5 General Unsecured Claims.

*See* Disclosure Statement at 52-53 (emphasis added).

17. The Plan provides for interest at the federal judgment rate as of the Petition Date (0.16%). At the disclosure statement hearing, the Court specifically asked Debtors' counsel whether an affirmative class vote could bar claims for a rate higher than the federal judgment rate. Debtors' counsel admitted that such a result was in fact possible.

## ARGUMENT

### I. The Solvent Debtor Exception Demands that Class 5 Claimants Must Receive Interest at the Contract or State Law Rate of Interest.

18. In *In re Ultra Petroleum Corp*, Judge Isgur explained the "solvent-debtor" exception" and the foundational bankruptcy principles undergirding it at length. *See In re Ultra Petroleum Corp.*, Case No. 16-32202 (MI), Bankr. S.D. Tex. Oct. 27, 2020 [ECF No. 1874]. Pursuant to this doctrine, "absent compelling equitable considerations, when a debtor is solvent, it is the role of the bankruptcy court to enforce the creditors' "contractual rights." *Id.* at 27 (quoting *In re Dow Corning Corp.*, 456 F.3d at 679. Before a debtor's equity holders can receive any residual distribution from the estates on account of their equity interests, the "solvent-debtor exception" requires that each of the debtor's creditors receive the full benefit of its contractual bargain. *See In re Ultra Petroleum,* at 30 (explaining that pre-Bankruptcy Code Fifth Circuit precedent required solvent debtors to "pay their debts in full, principal and interest to the time of payment, whenever the assets of the estate ore sufficient." (citing *Johnson v. Norris*, 190 F. 459, 466 (5th Cir. 1911)). The rationale for the exception is as obvious as it is uncontroversial: an individual with the means to pay his debts in full should be required to do so." *Id*. Moreover, "absent controlling federal law, a determination of a creditor's allowed claim necessarily references state law." *Id.* at 8.

19. Relevant, here, is the impact of the "solvent-debtor exception" on the appropriate calculation of post-petition interest for Class 5 general unsecured claims. The Debtors intend to calculate post-petition interest at the federal judgment rate, rather than at the applicable contract (or state law) rate. The savings in interest expense resulting from applying the *de minimis* federal judgment rate will inure to the benefit of the Debtors' equity holders, who appear to be receiving significant value under the Plan on account of their existing equity interests. Rather than paying Class 5 creditors the full amount due under their applicable contracts or state law – as required by the "solvent-debtor exception" – the Debtors propose to pay such creditors less than the full amount of their allowed claims by imposing a significantly lower interest rate (0.16% versus up to 18%). The economic benefit of this reduced interest expense will flow to the Debtors' equity holders, who will recover an unjust windfall at the expense of the Debtors' Class 5 creditors. This proposed treatment and transfer of value plainly violates the "solvent-debtor exception." As Judge Isgur explained:

> "[L]imiting the Class 4 Claimants to interest at the federal judgment rate contravenes the purpose of the solvent-debtor exception. The underlying purpose of the exception, recognized for nearly three hundred years, is that a debtor must repay its debts in full when it has the means to do so. This means that when a debtor is solvent, "a bankruptcy court's role is merely to enforce the contractual rights of the parties." Limiting post-petition interest to the federal judgment rate would not enforce the contractual rights of the parties in this case. Instead, it would curtail the Class 4 Claimants' recovery, while allowing Ultra and its equity holders to escape bankruptcy with a windfall."

*Ultra Petroleum*, at 42 (citing *In re Dow Corning*, 456 F.3d at 679).

20. The "solvent-debtor exception" was expressly intended to protect creditors in the equitable "tug-of-war" that arises between creditor and equity holders in the context of a solvent estate. *See Ultra Petroleum*, at 32 ("Instead, when the debtor is solvent, the equitable tug exists between unsecured creditors and the debtor's equity holders. The solvent-debtor exception ensures that the debtor does not received a windfall at the expense of its creditors.") (citing *In re Carter*,

- 9 -

220 B.R. 411, 416-17 (Bankr. D.N.M. 1998) (I[I]f the Court were to modify the originally contracted for [default] interest rate…, it would result in a windfall to the Debtor…at the [creditors'] expense."). Accordingly, creditors asserting contract-based claims against the Debtors are entitled to post-petition interest imposed by the contract, or by state statute, just as if it were set forth in the contract.

**II.    Unsecured Creditors in Class 5 Are Entitled to Post-Petition Interest at the Contract Rate or Otherwise Applicable State Law Rates Under the Fair and Equitable Test of § 1129(b).**

21.    By incorporating the "fair and equitable" standard into the Bankruptcy code, Congress codified the "absolute priority" rule. *In Re Dow Corning Corp.* at 672.; *see also* H.R. Rep 103-835, 48, 1994 U.S.C.C.A.N. 3340, 3357 ("The words 'fair and equitable' are terms of art that have a well-established meaning under the case law of the Bankruptcy Act as well as under the Bankruptcy Code."). The Supreme Court invoked this rule in defense of creditors demanding post-petition interest at contract rate. *See Consol. Rock Prod. Co. v. Du Bois*, 312 U.S. 510, 527 (1941) (stating that the plan "runs afoul" of the absolute priority rule where it provides for interest rate to the debtor's creditors at the rate that is lower than that provided for in applicable instruments). The Supreme Court stated that, before equity could receive anything under the debtor's plan, creditors had to receive "full compensatory treatment," which include post-petition interest at contract rate. *Id*. at 529; *See also Debentureholders v. Cont. Inv. Corp.*, 679 F.2d 264, 270 (1st Cir. 1982) ruling, in a solvent debtor case, that the plan was "unfair and inequitable because [it] . . . does not provide in exchange for the creditor's contractual right [to interest] just compensation"); *In re Dow Corning Corp.*, 244 B.R. 678, 695 (Bankr. E.D. Mich. 1999) (holding that the "fair and equitable test requires payment of post-petition interest at contract rate, stating that, in a solvent debtor case "the rationale for use of the contract rate of interest is straightforward:

A debtor with the financial wherewithal to honor its contractual commitments should do so.").[6] In the Disclosure Statement, Debtors assert that "In the event that the Bankruptcy Court determines that the Debtors are obligated to pay interest to the holders of Allowed General Unsecured Claims at the contract rate or state law rate rather that the federal judgment rate the Debtors will modify the Plan accordingly." Disclosure Statement at 53. As such, it is clear that Debtors have the financial wherewithal to pay whatever interest rate is determined by this Court to be appropriate.

22.     Pursuant to Bankruptcy Code § 1129(b), a plan proponent seeking to cram down a plan on a non-consenting class of creditors must satisfy the "fair and equitable" requirement embodying the absolute priority rule. The inquiry of whether the proposed treatment under the Plan meets the fair and equitable requirement with respect to the payment of post-petition interest, begins with the presumption that interest should be payable at contract or otherwise applicable state law rates. *See In re Ultra Petroleum*, at 21.

23.     The general rule in the 5th Circuit and elsewhere is that contractual rights to interest in solvent debtor cases are presumptively enforced, subject only to potential equitable considerations. *See Bradford v. Crozier (In re Laymon)*, 958 F.2d 72, 75 (5th Cir. 1992) (contract rate applies absent inequitable or unconscionable result. *See also In re Dow Corning Corp*, 456 F.3d at 680 ("Courts in solvent debtor cases have overwhelmingly concluded that there is a presumption that the default interest rate should be allowed.); *In re Terry Ltd. P'ship*, 27 F.3d 241,

---

[6] As the First Circuit noted in *UPS Capital Bus. Credit v. Gencarelli*, 501 F..3d 1, 7 (1st Cir. 2007), modern cases on point have deep roots in pre-Code and English law. *See New York v. Saper*, 336 U.S. 328, 330 n.7 (1949) (collecting precedents under English law for the proposition that "if the alleged 'bankrupt' proved solvent, creditors received post-bankruptcy interest before any surplus to the debtor"); *Vanston Bondholders Protective Comm. v. Green*, 329 U.S. 156, 165 (1946); *Am. Iron & Steel Mfg. Co. v. Seaboard Air Line Ry.*, 233 U.S. 261, 267 (1914) ("[I]n the rare instances where the assets ultimately proved sufficient for the purpose, . . .creditors were entitled to interest after adjudication."); *Matter of Chicago v. Milwaukee, St. Paul and Pacific R. Co.*, 791 F.2d 524, 530 (8th Cir. 1986) ("[W]hen the debtor is solvent the judicial task is to give each creditor the measure of [its] contractual claim, no more and no less.").

- 11 -

243 (7th Cir. 1994) (nothing "presumption in favor of contract rate subject to rebuttal based on equitable considerations").

24. When "a solvent debtor seeks confirmation of its plan, . . . equitable considerations operate differently" then when the debtor is insolvent. *In re Dow Corning*, 456 F.3d at 678. As courts of appeals have repeatedly held, solvency means that "the role that equitable principles play in the allocation of competing interest is significantly reduced" and gives way to "the presumption . . . that a bankruptcy court' role is merely to enforce the contractual rights of the parties. *See In re Ultra Petroleum* at 21; *In re Dow Corning*, 456 F.3d at 679. In *In re Dow Corning*, 456 F.3d, a class of unsecured commercial debt holders objected to a solvent debtor's plan of reorganization on the ground that the court "should enforce their rights under the contract, including their right to interest awarded at the default ate as set forth in the terms of their contract," because "[t]o do otherwise (i.e. to interpret the amended plan as not requiring the payment of default interest) . . . would violate § 1129(b)'s fair and equitable standard." Id. at 679. The Sixth Circuit "agree[d]," holding "like the other courts to have considered this issue . . . [we conclude] that there is a presumption that [contractual] default interest should be paid to unsecured claim holders in a solvent debtor case." Id. at 680.11 Indeed, when the debtor is solvent, depriving creditors of the benefit of their bargain is "the opposite of equity." Ruskin, 269 F.2d at 832.

25. When addressing the analogous question of equitable factors that might diminish an over-secured creditor's right to contract rate interest, courts have considered equitable factors to determine whether the presumption in favor of the contract rate has been rebutted, including the following: (i) whether the creditor engaged in misconduct or unjust delay; (ii) whether application of the contractual interest rate would harm unsecured creditors; (iii) whether the contractual interest rate constitutes a penalty; and (iv) whether an award of interest at the contract rate would

impair the debtor's fresh start. See In re Gen. Growth Props., Inc., No. 09-11977, 2011 WL 2974305, at *4 (Bankr. S.D.N.Y. July 20, 2011). None of these factors are present here.

26. ***First,*** there is no evidence of any misconduct or unjust delay. To the contrary, various creditors holding funded debt claims have attempted to engage the Debtors on a modified plan pursuant to which allowed Class 5 claims would be truly paid in full – including post-petition interest at the applicable contractual (or state law) rate. The Debtors have not meaningfully engaged in discussions related to this proposal.

27. ***Second,*** application of the contract or other state law rates will not harm other creditors. The Debtors are solvent and entirely capable of paying contract rates of interest to those unsecured creditors whose contracts specify contract rates, while still paying in full other unsecured creditors consistent with their state law rights. Indeed, the Debtors have represented that they will have sufficient funds to pay post-petition interest at the contract rate in the event the Court determines that is the appropriate rate.

28. ***Third***, there is no evidence that any of the rates payable here is punitive.

29. ***Fourth,*** payment of the contract or state law rates will not hinder the Debtors' reorganization. Again, Debtors have represented that have sufficient funds to pay post-petition interest at the contract rate in the event the Court determines that is the appropriate rate. The total amount of post-petition interest, while significant, is but a fraction of the overall value of the Debtors' estates, and there are no concerns that the payment will result in other creditors recovering less. The equities of these cases reinforce the presumption that unsecured creditors are entitled to their state law rights, including contract or state law rate of interest.

## CONCLUSION

The Plan does not provide for payment of interest at the contract rate (or the state law rate) to general unsecured creditors as required in solvent debtor cases such as this one. If confirmed, the Plan will result in a windfall for equity at the expense of creditors in violation of the absolute priority rule. To preserve the rights and legal safeguards afforded to creditors by § 1129(b) of the Bankruptcy Code, including the absolute priority rule, all Class 5 Claimants should vote to reject the Plan so that the Court has the opportunity to undertake the foregoing analysis with respect to the appropriate judgment rate payable to Class 5 Claimants.

Dated: November 25, 2020

**FAEGRE DRINKER BIDDLE & REATH LLP**

*/s/ Vince Slusher*
Vincent P. Slusher
State Bar No. 785480
Kristen L. Perry
State Bar No. 24090015
1717 Main Street, Suite 5400
Dallas, TX 752017367
Telephone: (469) 357-2500
Facsimile: (469) 327-0860
vince.slusher@faegredrinker.com
kristen.perry@faegredrinker.com

-and-

James H. Millar
Faegre Drinker Biddle & Reath LLP
1177 Avenue of the Americas, 41st Floor
New York, NY 10036-2714
Telephone: (212) 248-3140
Facismile: (212) 248-3141
james.millar@faegredrinker.com
*Admitted Pro Hac Vice*

*Counsel for Trade Claimants Committee*

- 15 -

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing document has been served to all counsel of record via the Court' ECF notification on November 25, 2020.

>*/s/ Kristen L. Perry*
>Kristen L. Perry